FREIGHTLINER CORP. ET AL. *v.* MYRICK ET AL.

No. 94–286.   Argued February 22, 1995—Decided April 18, 1995

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. SCALIA, J., concurred in the judgment.

*Charles Fried* argued the cause for petitioners. With him on the briefs were *Richard G. Taranto, Edgar A. Neely III, Richard B. North, Jr., James A. Jacobson,* and *Cindy F. Wile.*

*Paul R. Q. Wolfson* argued the cause for the United States as *amicus curiae* in support of respondents. With him on the brief were *Solicitor General Days, Assistant Attorney General Hunger, Deputy Solicitor General Kneedler, Douglas N. Letter, Paul D. Scott, Paul M. Geier,* and *Phillip R. Recht.*

*Michael H. Gottesman* argued the cause for respondents. With him on the brief were *Arthur H. Bryant, Leslie A. Brueckner, Robert M. Weinberg, Andrew D. Roth, James E. Carter, Raymond Brooks,* and *Charles A. Mathis, Jr.**

---

*Briefs of *amici curiae* urging reversal were filed for the American Automobile Manufacturers Association et al. by *David M. Heilbron* and *Leslie G. Landau;* for the American Trucking Associations, Inc., et al. by *Kenneth S. Geller, Erika Z. Jones, John J. Sullivan, Daniel R. Barney, Lynda S. Mounts,* and *Jan S. Amundson;* for the Product Liability Advisory Council, Inc., by *Malcolm E. Wheeler* and *Richard P. Barkley;* and for the Truck Trailer Manufacturers Association by *Glen M. Darbyshire.*

Briefs of *amicus curiae* urging affirmance were filed for the Association of Trial Lawyers of America by *Jeffrey Robert White* and *Larry S. Stew-*

JUSTICE THOMAS delivered the opinion of the Court.

By statute, the Secretary of Transportation has the authority to issue appropriate safety standards for motor vehicles and their equipment. Respondents filed lawsuits under state common law alleging negligent design defects in equipment manufactured by petitioners. Petitioners claim that these actions are pre-empted by a federal safety standard, even though the standard was suspended by a federal court. We hold that the absence of a federal standard cannot implicitly extinguish state common law.

I

This case arises from two separate but essentially identical accidents in Georgia involving tractor-trailers. In both cases, 18-wheel tractor-trailers attempted to brake suddenly and ended up jackknifing into oncoming traffic. Neither vehicle was equipped with an antilock braking system (ABS).[1] In the first case, respondent Ben Myrick was the driver of an oncoming vehicle that was hit by a tractor-trailer manufactured by petitioner Freightliner. The accident left him permanently paraplegic and brain damaged. In the second case, the driver of an oncoming car, Grace Lindsey, was killed when her vehicle collided with a tractor-trailer manufactured by petitioner Navistar.

---

art; for the National Conference of State Legislatures et al. by *Richard Ruda* and *James I. Crowley;* and for Public Citizen, Inc., by *Alan B. Morrison, Cornish F. Hitchcock,* and *David C. Vladeck.*

[1] ABS "helps prevent loss of control situations by automatically controlling the amount of braking pressure applied to a wheel. With these systems, the Electronic Control Unit (ECU) monitors wheel-speeds, and changes in wheel-speeds, based on electric signals transmitted from sensors located at the wheels or within the axle housings. If the wheels start to lock, the ECU signals a modulator control valve to actuate, thereby reducing the amount of braking pressure applied to the wheel that is being monitored." 57 Fed. Reg. 24213 (1992).

Respondents independently sued the manufacturers of the tractor-trailers under state tort law. They alleged that the absence of ABS was a negligent design that rendered the vehicles defective. Petitioners removed the actions to the District Court for the Northern District of Georgia on the basis of diversity of citizenship. They then sought summary judgment on the ground that respondents' claims were pre-empted by the National Traffic and Motor Vehicle Safety Act of 1966 (Safety Act or Act), Pub. L. 89–563, 80 Stat. 718, as amended, 15 U. S. C. § 1381 *et seq.*, and its implementing regulations. In respondent Myrick's case, the District Court held that the claims were pre-empted by federal law and granted summary judgment for petitioner Freightliner. *Myrick* v. *Fruehauf Corp.*, 795 F. Supp. 1139 (ND Ga. 1992). Following the opinion in the Myrick case, the District Court granted summary judgment in the Lindsey action in favor of petitioner Navistar.

The Court of Appeals for the Eleventh Circuit consolidated the cases and reversed. *Myrick* v. *Freuhauf Corp.*, 13 F. 3d 1516 (1994). It held that under its previous decision in *Taylor* v. *General Motors Corp.*, 875 F. 2d 816 (CA11 1989), cert. denied, 494 U. S. 1065 (1990), the state-law tort claims were not expressly pre-empted. The Court of Appeals rejected petitioners' alternative argument that the claims were pre-empted due to a conflict between state law and the federal regulatory scheme. We granted certiorari, 513 U. S. 922 (1994). We now affirm.

## II

In 1966, Congress enacted the Safety Act "to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." 15 U. S. C. § 1381. The Act requires the Secretary of Transportation to establish "appropriate Federal motor vehicle safety standards." § 1392(a). The Act defines a safety standard as "a minimum standard for

motor vehicle performance, or motor vehicle equipment performance, which is practicable, which meets the need for motor vehicle safety and which provides objective criteria." § 1391(2).

The Safety Act's express pre-emption clause provides:

> "Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. Nothing in this section shall be construed as preventing any State from enforcing any safety standard which is identical to a Federal safety standard." § 1392(d).

The Act also contains a saving clause, which states: "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." § 1397(k).

The Secretary has delegated the authority to promulgate safety standards to the Administrator of the National Highway Traffic Safety Administration (NHTSA). 49 CFR § 1.50(a) (1994). In 1970, the predecessor to NHTSA issued regulations concerning vehicles equipped with air brakes, which are used in trucks and tractor-trailers. Known as Standard 121, this regulation imposed stopping distances and vehicle stability requirements for trucks. See 36 Fed. Reg. 3817 (1971).[2] Because these stopping distances were

---

[2] Standard 121 required air-brake equipped vehicles to stop within certain distances at various speeds without deviating from a 12-foot-wide lane, and without any wheel lock-up. 49 CFR § 571.121 S5.3.1 (1972). The initial stopping distance requirement from 60 miles per hour was 217 feet on a dry surface. The regulation also established brake actuation and release times, as well as other aspects of brake performance. *Ibid.*

shorter than those that could be achieved with brakes without ABS, several manufacturers notified NHTSA that ABS devices would be required. Some manufacturers asked NHTSA to alter the standard itself because they believed that ABS devices were unreliable and rendered vehicles dangerously unsafe when combined with new, more effective brakes. In 1974, NHTSA responded that Standard 121 was practical and that ABS devices did not cause accidents. See generally *Paccar, Inc.* v. *NHTSA,* 573 F. 2d 632, 637–638 (CA9), cert. denied, 439 U. S. 862 (1978).

Several manufacturers and trade associations then sought review of Standard 121 in the Court of Appeals for the Ninth Circuit. That court remanded the case to NHTSA because "a careful review of the extensive record" indicated that "the Standard was neither reasonable nor practicable at the time it was put into effect." 573 F. 2d, at 640. The court found that NHTSA had failed to consider the high failure rate of ABS devices placed in actual use, *id.,* at 642, and that "there [was] a strong probability that [ABS] has created a potentially more hazardous highway situation than existed before the Standard became operative," *id.,* at 643. Until NHTSA compiled sufficient evidence to show that ABS would not create the possibility of greater danger, the court concluded, the Standard would remain suspended. *Ibid.*

After the Ninth Circuit's decision in *Paccar,* the agency amended Standard 121 so that the stopping distance and lock-up requirements no longer applied to trucks and trailers. NHTSA nevertheless left the unamended Standard 121 in the Code of Federal Regulations so that "the affected sections [could] most easily be reinstated" when the agency met *Paccar*'s requirements. 44 Fed. Reg. 46849 (1979). NHTSA also stated that the provisions would remain in place so that manufacturers would know "what the agency still considers to be reasonable standards for minimum acceptable performance." *Ibid.* Although NHTSA has developed new stopping distance standards, to this day it still

has not taken final action to reinstate a safety standard governing the stopping distance of trucks and trailers.

## III

Despite the fact that Standard 121 remains suspended, petitioners maintain that respondents' lawsuits are expressly pre-empted. We disagree. The Act's pre-emption clause applies only "[w]henever a Federal motor vehicle safety standard . . . is in effect" with respect to "the same aspect of performance" regulated by a state standard. 15 U. S. C. § 1392(d). There is no express federal standard addressing stopping distances or vehicle stability for trucks or trailers. No NHTSA regulation currently establishes a "minimum standard for . . . motor vehicle equipment performance," § 1391(2), nor is any standard "stated in objective terms," § 1392(a). There is simply no minimum, objective standard stated at all. Therefore, States remain free to "establish, or to continue in effect," their own safety standards concerning those "aspect[s] of performance." § 1392(d).

Petitioners insist, however, that the absence of regulation itself constitutes regulation. Relying upon our opinion in *Ray* v. *Atlantic Richfield Co.*, 435 U. S. 151 (1978), petitioners assert that the failure of federal officials " 'affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute.' " *Id.*, at 178 (quoting *Bethlehem Steel Co.* v. *New York State Labor Relations Bd.*, 330 U. S. 767, 774 (1947). Unlike this case, however, we found in *Ray* that Congress intended to centralize all authority over the regulated area in one decisionmaker: the Federal Government. 435 U. S., at 177. Here, there is no evidence that NHTSA decided that trucks and trailers should be free from all state regulation of stopping distances and vehicle stability. Indeed, the lack of federal regulation did not result from an affirmative decision of agency officials to refrain from regulating air brakes. NHTSA did not decide that the

minimum, objective safety standard required by 15 U. S. C. § 1392(a) should be the absence of all standards, both federal and state.[3] Rather, the lack of a federal standard stemmed from the decision of a federal court that the agency had not compiled sufficient evidence to justify its regulations.

## IV

Even if § 1392(d) does not expressly extinguish state tort law, petitioners argue that respondents' lawsuits are pre-empted by implication because the state-law principle they seek to vindicate would conflict with federal law. We have recognized that a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, *English* v. *General Elec. Co.*, 496 U. S. 72, 78–79 (1990), or when state law is in actual conflict with federal law. We have found implied conflict pre-emption where it is "impossible for a private party to comply with both state and federal requirements," *id.*, at 79, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines* v. *Davidowitz*, 312 U. S. 52, 67 (1941).

## A

As an initial matter, we must address the argument that we need not reach the conflict pre-emption issue at all. According to respondents and the Court of Appeals, *Cipollone* v. *Liggett Group, Inc.*, 505 U. S. 504 (1992), held that implied pre-emption cannot exist when Congress has chosen to include an express pre-emption clause in a statute. This argument is without merit. In *Cipollone* we did hold that the

---

[3] Because no federal safety standard exists, we need not reach respondents' argument that the term "standard" in 15 U. S. C. § 1392(d) pre-empts only state statutes and regulations, but not common law. We also need not address respondents' claim that the saving clause, § 1397(k), does not permit a manufacturer to use a federal safety standard to immunize itself from state common-law liability.

pre-emptive scope of the two statutes at issue was governed by the language in each Act. That conclusion rested on a familiar canon of statutory construction and on the absence of any reason to infer any broader pre-emption. Instead of announcing a categorical rule precluding the coexistence of express and implied pre-emption, however, the relevant passage in the opinion stated:

> "In our opinion, the pre-emptive scope of the 1965 Act and the 1969 Act is governed entirely by the express language in § 5 of each Act. When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a 'reliable indicium of congressional intent with respect to state authority,' *Malone* v. *White Motor Corp.*, 435 U. S., at 505, 'there is no need to infer congressional intent to preempt state laws from the substantive provisions' of the legislation. *California Federal Savings & Loan Assn.* v. *Guerra*, 479 U. S. 272, 282 (1987) (opinion of MARSHALL, J.). Such reasoning is a variant of the familiar principle of *expressio unius est exclusio alterius:* Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted. In this case, the other provisions of the 1965 and 1969 Acts offer no cause to look beyond § 5 of each Act. Therefore, we need only identify the domain expressly pre-empted by each of those sections. As the 1965 and 1969 provisions differ substantially, we consider each in turn." *Id.*, at 517.

The fact that an express definition of the pre-emptive reach of a statute "implies"—*i. e.*, supports a reasonable inference—that Congress did not intend to pre-empt other matters does not mean that the express clause entirely forecloses any possibility of implied pre-emption. Indeed, just two paragraphs after the quoted passage in *Cipollone,* we

engaged in a conflict pre-emption analysis of the Federal Cigarette Labeling and Advertising Act, 79 Stat. 282, as amended, 15 U. S. C. § 1331 *et seq.*, and found "no general, inherent conflict between federal pre-emption of state warning requirements and the continued vitality of state common-law damages actions." 505 U. S., at 518. Our subsequent decisions have not read *Cipollone* to obviate the need for analysis of an individual statute's pre-emptive effects. See, *e. g., CSX Transp., Inc.* v. *Easterwood,* 507 U. S. 658, 673, n. 12 (1993) ("We reject petitioner's claim of implied 'conflict' pre-emption . . . on the basis of the preceding analysis"). At best, *Cipollone* supports an inference that an express pre-emption clause forecloses implied pre-emption; it does not establish a rule.

## B

Petitioners' pre-emption argument is ultimately futile, however, because respondents' common-law actions do not conflict with federal law. First, it is not impossible for petitioners to comply with both federal and state law because there is simply no federal standard for a private party to comply with. Nothing in the Safety Act or its regulations currently regulates the use of ABS devices. As Standard 121 imposes no requirements either requiring or prohibiting ABS systems, tractor-trailer manufacturers are free to obey state standards concerning stopping distances and vehicle stability.

Second, we cannot say that the respondents' lawsuits frustrate "the accomplishment and execution of the full purposes and objectives of Congress." *Hines, supra,* at 67. In the absence of a promulgated safety standard, the Act simply fails to address the need for ABS devices at all. Further, Standard 121 currently has nothing to say concerning ABS devices one way or the other, and NHTSA has not ordered truck manufacturers to refrain from using ABS devices. A finding of liability against petitioners would undermine no

federal objectives or purposes with respect to ABS devices, since none exist.

For the foregoing reasons, the judgment of the Court of Appeals for the Eleventh Circuit is affirmed.

*It is so ordered.*

JUSTICE SCALIA concurs in the judgment.