OPINION OF THE COURT
Bbllacosa, J.
This Court must determine whether the National Traffic and Motor Vehicle Safety Act of 1966 preempts a State common-law action. The lawsuit is against a manufacturer, based on the theory of defective design due to the absence of an air bag in a 1991 Toyota Tercel. We conclude that the plaintiffs’ common-law claim was not preempted by the Congressional Safety Act under any of the propounded theories.
Supreme Court granted defendant Toyota Motor Corporation’s motion for partial summary judgment. The Appellate Division reversed, denied the motion and reinstated the com *40 plaint against the Toyota defendants in its entirety. The Appellate Division granted Toyota leave to appeal, certifying the standard question as to the correctness of its order. Because our answer is that the intermediate appellate court ruled correctly, we now affirm its order.
L
Plaintiff Caryn Drattel was injured while driving her 1991 Toyota Tercel. At the time of the accident, she was wearing both a shoulder harness and a lap seat belt. Plaintiffs sued the manufacturer and distributors of the automobile (as well as the owner and driver of the other vehicle). Plaintiffs alleged defective design and failure to provide adequate safety protection, particularly because of the absence of a safer alternative design — a driver’s-side air bag.
Supreme Court found that plaintiff’s State claims were preempted by Federal law. The court relied principally on a Fourth Department, Appellate Division, case which found express preemption (see, Panarites v Williams, 216 AD2d 874; see also, Gardner v Honda Motor Co., 145 AD2d 41, lv dismissed 74 NY2d 715). The Appellate Division, Second Department, reversed in the instant case, finding that plaintiffs’ claims were not preempted (231 AD2d 326). The court concluded that based upon the language and purpose of the Safety Act, and its legislative history, Congress did not intend to preempt State common-law claims (id., at 328). Two Justices dissented; they agreed with Supreme Court and urged the view that Congress intended to preempt common-law claims (id., at 330-334).
IL
In 1966, Congress enacted the National Traffic and Motor Vehicle Safety Act (former 15 USC § 1381 et seq. [recodified in 49 USC § 30101 et seq. (1994) “without substantive change”]). Congress expressly declared that the purpose of the Safety Act was “to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents” (former 15 USC § 1381; see, S Rep No. 1301, 89th Cong, 2d Sess, at 12, reprinted in 1966 US Code Cong & Admin News 2709, 2720 [noting that the Act reflects “the soaring rate of death and debilitation on the Nation’s highways”]). Congress determined that in order to achieve this stated goal it was “necessary to establish motor vehicle safety standards for motor vehicles and equipment in interstate commerce” (former 15 USC § 1381).
*41 Congress defined the term “safety standard” as “a minimum standard for motor vehicle performance, or motor vehicle equipment performance, which is practicable, which meets the need for motor vehicle safety and which provides objective criteria” (former 15 USC § 1391 [2] [emphasis added]). Solely at issue in the instant case is Motor Vehicle Safety Standard 208 (49 CFR 571.208). It gives automobile manufacturers three options to comply with the minimum safety standards, the installation of air bags being just one of the alternatives.
The Safety Act includes two sections that are critical to resolving this case. First, the preemption clause states:
“Whenever a Federal motor vehicle safety standard established under this title is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment[,] any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. Nothing in this section shall be construed as preventing any State from enforcing any safety standard which is identical to a Federal safety standard. Nothing in this section shall be construed to prevent the Federal Government or the government of any State or political subdivision thereof from establishing a safety requirement applicable to motor vehicles or motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required to comply with the otherwise applicable Federal standard” (former 15 USC § 1392 [d] [emphasis added]).
Correspondingly, a savings clause exception to the already limited preemption clause is also expressly included:
“Compliance with any Federal motor vehicle safety standard issued under this title does not exempt any person from any liability under common law” (former 15 USC § 1397 [k] [emphasis added]).
Within that matrix, we now turn to the particular preemption problem in this case. Toyota, as appellant, contends that the Safety Act expressly preempts nonidentical State standards, including standards emanating out of State tort law. Alternatively, Toyota argues that plaintiffs’ claim is impliedly *42 preempted by Federal law. It advances a number of theories in this regard: (1) a common-law tort standard requiring air bags would destroy the options and flexibility at the heart of the Federal statute; (2) no-airbag claims would destroy the Federal goal of uniform national standards; (3) the assertion of an express preemption clause does not bar a traditional implied preemption analysis; and (4) the general savings clause does not preserve common-law claims that conflict with Federal law.
Plaintiffs counter that the express preemption provision, savings clause and legislative history of the Safety Act preserve their claims. Additionally, plaintiffs contend that the implied preemption question should not even be reached because Congress expressly preserved the pursuit of common-law State claims. Alternatively, plaintiffs urge that their claims are not impliedly preempted, in any event, because they do not conflict with the Safety Act or accompanying regulations.
IIL
The Supremacy Clause of the United States Constitution provides that Federal laws “shall be the supreme Law of the Land; * * * any Thing in the Constitution or Laws of any State to the Contrary notwithstanding” (US Const, art VI, cl [2]). The United States Supreme Court has emphasized that “ [c] onsideration of issues arising under the Supremacy Clause ‘start [s] with the assumption that the historic police powers of the States [are] not to be superseded by * * * Federal Act unless that [is] the clear and manifest purpose of Congress’ ” (Cipollone v Liggett Group, 505 US 504, 516, quoting Rice v Santa Fe El. Corp., 331 US 218, 230). The High Court has “oft-repeated” that “ ‘[t]he purpose of Congress is the ultimate touchstone’ ” of every preemptive analysis (Medtronic, Inc. v Lohr, 518 US 470, 485, quoting Retail Clerks v Schermerhorn, 375 US 96, 103). Pointedly, this Court has also summarized the guiding principle that a “preemption question is ultimately one of congressional intent” (Quice v Schwab & Co., 89 NY2d 31, 39, cert denied 520 US 1118).
Congressional preemptive intent may be discerned in three ways: (1) expressly in the language of the Federal statute; (2) implicitly, when the Federal legislation is so comprehensive in scope that it is inferable that Congress intended to fully occupy the “field” of its subject matter; or (3) implicitly, when State law actually “conflicts” with Federal law (Guice v Schwab & Co., 89 NY2d 31, 39, supra). The last category may be trig *43 gered when it is impossible to comply with both Federal and State laws, or when the State law “stands as an obstacle to the accomplishment of the full purposes and objectives of Congress” (City of New York v Job-Lot Pushcart, 88 NY2d 163, 170, cert denied sub nom. JA-RU v City of New York, 519 US 871; see, Hines v Davidowitz, 312 US 52, 67; Barnett Bank of Marion County v Nelson, 517 US 25).
IV.
We address express preemption first. A trilogy of United States Supreme Court cases must be discussed, analyzed and harmonized to fit a proper resolution of the instant dispute into the complex universe of principles and precedents (see, Cipollone v Liggett Group, 505 US 504, supra; Freightliner Corp. v Myrick, 514 US 280; Medtronic, Inc. v Lohr, 518 US 470, supra).
Cipollone v Liggett Group (505 US 504, supra) involves the preemptive effect of the Public Health Cigarette Smoking Act of 1969 (Pub L 91-222, 84 US Stat 87, as amended, 15 USC §§ 1331-1340). Its preemption clause provided that “[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act” (Cipollone v Liggett Group, supra, at 515 [emphasis added]).
There, the argument against preemption of common-law actions was premised on the view that common-law damages actions do not impose “ ‘requirement [s] or prohibition[s]’ and that Congress intended only to trump ‘state statute [s], injunction [s], or executive pronouncement[s]’ ” (id., at 521). A plurality of the Supreme Court rejected this contention, stating that “[t]he phrase ‘[n]o requirement or prohibition’ sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules” (id.). It further reasoned that “ ‘[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy’ ” (id.).
Additionally, the Cipollone plurality interpreted the phrase “State law” in the Act’s preemption provision to encompass common-law claims (id., at 522). Distinguishably, it stated that “[a]lthough the presumption against pre-emption might give *44 good reason to construe the phrase ‘state law’ in a pre-emption provision more narrowly than an identical phrase in another context, in this case such a construction is not appropriate” (id., at 522). The reasoning was that an earlier version of the Act was more precise and narrow on its face, and that, therefore, the broader language of the subsequent Act at issue extended that section’s preemptive reach (id., at 522-523).
Cipollone is distinguishable because it was particularly suited to the specific statute at issue there. A key additional feature is that the Cipollone statute did not contain a savings clause. In fact, the plurality emphasized that it “ ‘must give effect to this plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning ” (id., at 521 [emphasis added], quoting Shaw v Delta Air Lines, 463 US 85, 97). It then concluded that there was “no ‘good reason to believe’ that Congress meant less than what it said” (id., at 522).
Next in the procession of United States Supreme Court preemption cases is Freightliner Corp. v Myrick (514 US 280, supra). There, the Supreme Court found against express or implied preemption with regard to the same Federal Safety Act at issue here. The plaintiffs alleged that the absence of an antilock braking system in tractor-trailers manufactured by the defendants constituted a negligent design defect (id., at 283). Notably, however, because the Federal antilock braking system standard at issue there had been suspended, that case is of limited dispositional guidance for present purposes (id., at 285). The Court stated that the Act’s preemption clause applies only when a Federal motor vehicle safety standard is “ ‘in effect’ ” (id., at 286, quoting former 15 USC § 1392 [d]). Therefore, as there was “no minimum, objective standard at all,” the Court resolved that the States were not precluded from continuing and applying their own safety standards (id.).
The third Supreme Court preemption pronouncement came in Medtronic, Inc. v Lohr (518 US 470, supra). The Court found that the Medical Device Amendments Act of 1976 did not preempt a State common-law negligence action against the manufacturer of an allegedly defective device (id., at 474, 503). It held that the preemption clause at issue there did not preclude the plaintiff, injured when her pacemaker failed, from invoking Florida common law (id.). The preemption clause provided that “no State * * * may establish * * * any requirement (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which *45 relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter” (id., at 486 [emphasis added]).
A plurality of the Supreme Court rejected the defendant’s argument that the word “requirement” includes common-law claims, characterizing the contention as “unpersuasive” and “implausible” (id., at 487). It stated that “if Congress intended to preclude all common-law causes of action, it chose a singularly odd word [i.e., ‘requirement’] with which to do it” (id. [emphasis added]). The plurality declared that “[t]he statute would have achieved an identical result, for instance, if it had precluded any ‘remedy’ under state law relating to medical devices” (id.). It also explained that “ ‘[Requirement’ appears to presume that the State is imposing a specific duty upon the manufacturer, and although [in Cipollone we] concluded that a statute pre-empting certain state ‘requirements’ could also preempt common-law damages claims * * * that statute did not sweep nearly as broadly as [the statute in Medtronic]” (id., at 487-488).
This cogent analysis supports the unanimous conclusion of this Court that no express preemption exists in this case. Informed by the evolution of the guiding principles and precedents, and persuaded most significantly by the savings clause in the Safety Act, we conclude that Congress did not expressly preempt State common-law claims. Notably, the trumping effect of the instant savings clause for resolving express preemption questions was entirely absent from the statutes and relevant analyses in both Medtronic and Cipollone. Additionally, although the Supreme Court Justices have varied widely in their individual expressions in these various cases, we discern no utility in reassembling their positions in an effort to predict some future outcome of the instant dispute.
Our conclusion that the Safety Act does not expressly preempt common-law claims is also in accord with the predominant holdings of the Federal Circuit Courts that have considered the question (see, Pokorny v Ford Motor Co., 902 F2d 1116, 1121 [3d Cir], cert denied 498 US 853; Taylor v General Motors Corp., 875 F2d 816, 825 [11th Cir], cert denied 494 US 1065; Kitts v General Motors Corp., 875 F2d 787, 789 [10th Cir], cert denied 494 US 1065; Wood v General Motors Corp., 865 F2d 395, 402 [1st Cir], cert denied 494 US 1065; see also, Irving v Mazda Motor Corp., 136 F3d 764 [11th Cir]; Myrick v Freuhauf Corp., 13 F3d 1516 [11th Cir], affd on other grounds sub nom. Freightliner Corp. v Myrick, 514 US 280; Buzzard v *46 Roadrunner Trucking, 966 F2d 777, 781 [3d Cir]; but see, Harris v Ford Motor Co., 110 F3d 1410, 1415 [9th Cir]).
Additionally, the majority of the highest courts of our sibling States have also determined that the Act does not expressly preempt State damage claims based upon a manufacturer’s failure to install air bags (see, Cellucci v General Motors Corp., 550 Pa 407, 413-414, 706 A2d 806, 809 [1998]; Minton v Honda of Am. Mfg., 80 Ohio St 3d 62, 70-71, 684 NE2d 648, 655 [1997]; Munroe v Galati, 189 Ariz 113, 116-117, 938 P2d 1114, 1117-1118 [1997]; Wilson v Pleasant, 660 NE2d 327, 330 [Ind 1995]; Tebbetts v Ford Motor Co., 140 NH 203, 206-207, 665 A2d 345, 347 [1995], cert denied 516 US 1072; but see, Zimmerman v Volkswagen of Am., 128 Idaho 851, 856-857, 920 P2d 67, 72 [1996], cert denied 520 US 1115).
Noteworthily, the trilogy of Supreme Court cases and the mass of other cases in this preemption area have spawned significant and useful commentary (see, Grey, Make Congress Speak Clearly: Federal Preemption of State Tort Remedies, 77 BU L Rev 559, 565 [1997] [reviewing Cipollone and Medtronic, and arguing that when “statutory ambiguity exists, courts should be extremely wary of finding congressional intent to preempt”]; Leflar and Adler, The Preemption Pentad: Federal Preemption of Products Liability Claims after Medtronic, 64 Tenn L Rev 691 [1997]; Warren, Compliance with Governmental Regulatory Standards: Is It Enough to Immunize a Defendant from Tort Liability ?, 49 Baylor L Rev 763 [1997]; Klein, Toward a Workable Paradigm of Federal Preemption, SC33 ALI-ABA 101 [1998]).
We confidently join this plethora of persuasive authority on the side of no express preemption. First and foremost, the particular preemption provision does not specifically mention common-law liability and the presumption against preemption must also be given weight. Courts finding no express preemption agree that the absence of any explicit reference to common-law actions in the preemption clause leads to a no-express preemption conclusion (see, Minton v Honda of Am. Mfg., supra, 80 Ohio St 3d, at 70-72, 684 NE2d, at 655-656). As noted in Medtronic, if Congress had intended the preemption clause to preclude State tort claims, it could have easily achieved that result. Indeed, Federal courts have aptly noted that Congress has explicitly referred to common-law actions in the preemption clauses of other statutes when it has sought to foreclose that route to recompense (Taylor v General Motors Corp., 875 F2d 816, 824, supra, citing Domestic Housing and International *47 Recovery and Financial Stability Act, 12 USC § 1715z-17 [d]; § 1715Z-18 [e] [1987]; Copyright Act of 1976, 17 USC § 301 [a] [1982]; Employment Retirement Income Security Act of 1974, 29 USC § 1144 [a], [c] [1] [1982]; see, Pokorny v Ford Motor Co., 902 F2d 1116, 1121, supra). We thus simply see no justifiable basis to conclude, as the dissent does, that Congress intended the term “standards” to be “synonymous” with common-law claims (see, dissenting opn, at 57, 58).
Moreover, the savings clause of the Safety Act potently and pointedly negates any lingering notion of express preemption of State common-law claims. That clause, which must be. read in tandem with the general preemption language in the Act, sweepingly yet particularly authorizes the prosecution of “any” common-law claims, including those relating to specific safety standards (Taylor v General Motors Corp., supra, 875 F2d, at 824; see, Pokorny v Ford Motor Co., supra, 902 F2d, at 1121). We disagree with the dissent’s characterization of the savings clause as “highly ambiguous” (see, dissenting opn, at 58). It is hard to imagine how Congress could have been plainer in its intended meaning in this regard and it takes tortured syntax and law to propose a newly fashioned version of what it actually said.
Courts have properly rejected pleas to narrowly interpret the savings clause as preserving common-law liability only for those automobile safety defects that are not specifically addressed by a safety standard (see, Taylor v General Motors Corp., supra, 875 F2d, at 824). It strains reason and common sense to suggest that Congress used sweeping language to create a constricted universe. That would not make good law or justifiable judicial analysis. Additionally, the narrow construction urged “would render the savings clause a mere redundancy since the preemption clause itself provides that where a federal standard does not govern ‘the same aspect of performance’ as the state standard, the state standard is not preempted” (id.). Proper statutory construction rubrics do not allow for such hollowness.
Lastly, in this regard, we find that the legislative history of the Act confirms that the savings clause was intended by Congress to preserve State law remedies in circumstances involving defectively manufactured automobiles (see, Minton v Honda of Am. Mfg., 80 Ohio St 3d, at 71-73, 684 NE2d 648, 656-657, supra). Specifically, the Senate Report states that “the Federal minimum safety standards need not be interpreted as restricting State common law standards of care. Compliance *48 with such standards would thus not necessarily shield any person from product liability at common law” (S Rep No. 1301, 89th Cong, 2d Sess, at 12, reprinted in 1966 US Code Cong & Admin News 2709, 2720 [emphasis added]). The House Committee Report is correspondingly supportive, declaring that Congress “intended, and this subsection specifically establishes, that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law particularly those relating to warranty, contract, and tort liability” (HR Rep No. 1776, 89th Cong, 2d Sess, at 24 [1966] [emphasis added]).
V.
We must next determine whether Congress intended any implied preemption of State common-law actions. This preemption category has generated significant controversy and division among the courts that have reviewed the Safety Act in this respect.
Cipollone addressed the implied preemption prong and, more , specifically, its availability in light of a statutorily expressed preemption provision. A majority of the High Court stated as follows:
“When Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a ‘reliable indicium of congressional intent with respect to state authority,’ ‘there is no need to infer congressional intent to pre-empt state laws from the substantive provisions’ of the legislation. Such reasoning is a variant of the familiar principle of expressio unius est exclusio alterius: Congress’ enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not preempted” (Cipollone v Liggett Group, 505 US 504, 517, supra [citations omitted] [emphasis added]).
Notably, Freightliner Corp. v Myrick (514 US 280, supra) seemed to qualify and restrict this dictum. Interpreting Cipollone, the Myrick Court concluded that “[t]he fact that an express definition of the pre-emptive reach of a statute ‘implies’ — i.e., supports a reasonable inference — that Congress did not intend to pre-empt other matters does not mean that the express clause entirely forecloses any possibility of implied *49 preemption” (id., at 288 [emphasis added]). The Court stated that “[a]t best, Cipollone supports an inference that an express pre-emption clause forecloses implied pre-emption; it does not establish a rule” (id., at 289 [emphasis added]).
Myrick did not overrule Cipollone; rather, it clarified decisions that interpreted Cipollone to mean that implied preemption can never exist when Congress has expressly preempted a field. In any event, the two cases read together do not favor, support or mandate an implied preemption analysis of common-law claims in the present case framework. Although after My-rick an express preemption clause will not “entirely foreclose [ ] any possibility of implied pre-emption” (Freightliner Corp. v Myrick, supra, 514 US, at 288), Myrick still favors an inference that in applicable situations an express preemption clause may foreclose a claim of comprehensive implied preemption (see, Munroe v Galati, 189 Ariz 113, 117-118, 938 P2d 1114, 1118 [1997], supra). The dissent’s rejection of the proposition that an “express preemption clause in a Federal statute may render it unnecessary for a court to undertake [an] implied conflict preemption analysis” flatly ignores the direct language of the Cipollone and Myrick majority opinions (see, dissenting opn, at 60 [emphasis added]).
Therefore, the instant case provides a comfortable fit to My-rick in this regard. Here, the Safety Act’s express preemption clause combined with the savings clause and over-all legislative history provide far more than a “ ‘reliable indicium of congressional intent’ ” to preserve common-law causes of action such as the plaintiffs’ action (Cipollone v Liggett Group, 505 US 504, 517, supra, quoting Malone v White Motor Corp., 435 US 497, 505).
We are unpersuaded by the view that the Safety Act does not provide a “reliable indicium of congressional intent” because Congress never anticipated the situation that now confronts us — litigation of common-law claims (see, Wood v General Motors Corp., 865 F2d 395, 402, supra). This theory is groundless in the face of the savings clause alone. Additionally, “design defect litigation, although then a relatively recent phenomenon, was not so new as to catch the Congress unawares” (id., at 421 [Seyla, J., dissenting]).
While we conclude that an implied preemption analysis is not warranted here, we nonetheless, out of a desire for comprehensive thoroughness, fully address the arguments and are satisfied that plaintiffs’ claims are not impliedly preempted.
*50 VL
Interpreting and applying the relevant Supreme Court decisions, various highest courts of the States have comfortably taken the no-implied preemption route with regard to the Safety Act (see, Minton v Honda of Am. Mfg., 80 Ohio St 3d 62, 74-75, 684 NE2d 648, 658 [1997], supra; Munroe v Galati, 189 Ariz 113, 119, 938 P2d 1114, 1120 [1997], supra; Wilson v Pleasant, 660 NE2d 327, 335-339 [Ind 1995], supra; Tebbetts v Ford Motor Co., 140 NH 203, 207-208, 665 A2d 345, 348 [1995], supra).
On the other hand, a few have ruled in favor of implied preemption (see, Cellucci v General Motors Corp., 550 Pa 407, 417-420, 706 A2d 806, 811-812 [1998], supra; Cooper v General Motors Corp., 702 So 2d 428, 434 [Miss 1997]). Several Circuit Courts have also added their weight to the implied preemption school in this context (see, Pokorny v Ford Motor Co., 902 F2d 1116, 1121-1122, 1126 [3d Cir], supra; Taylor v General Motors Corp., 875 F2d 816, 825 [11th Cir], supra; Kitts v General Motors Corp., 875 F2d 787, 789 [10th Cir], supra; Wood v General Motors Corp., 865 F2d 395, 402 [1st Cir], supra). Notably, however, the substantial majority of these Federal no-implied-preemption rulings were made prior to Cipollone and Myrick (but see, Montag v Honda Motor Co., 75 F3d 1414 [10th Cir 1996], cert denied sub nom. Montag v American Honda Motor Co., 519 US 814; Irving v Mazda Motor Corp., 136 F3d 764 [11th Cir 1998], supra [both decided after Cipollone and Myrick]).
Utilizing the mass of precedents as best and selectively as we can, we turn to the particular implied preemption arguments made in this case. Initially, we conclude that no implied “field” preemption is supportable because the Safety Act does not purport to occupy the field exclusively and comprehensively with respect to the pertinent claims. Indeed, the savings clause dramatically demonstrates the opposite — that Congress did not intend to occupy the entire field of automotive safety. This appears to be the unanimous view of both State and Federal courts.
The implied “conflict” preemption prong presents a bit of a different problem and has generated some varying views among the courts. Myrick stated that implied “conflict” preemption exists “where it is ‘impossible for a private party to comply with both state and federal requirements * * *’ or where state law ‘stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress’ ” (Freightliner *51 Corp. v Myrick, 514 US 280, 287, supra, quoting English v General Elec. Co., 496 US 72, 79, and Hines v Davidowitz, 312 US 52, 67, supra; see, City of New York v Job-Lot Pushcart, 88 NY2d 163, 170, supra). That expression well serves as our guidepost in this respect.
First, we do not believe that it is “ ‘impossible for [Toyota] to comply with both state and federal requirements’ ” (Freightliner Corp. v Myrick, supra, 514 US, at 287, quoting English v General Elec. Co., 496 US 72, 79, supra). While certain circumstances may occur in which a common-law judgment could be preempted due to a conflict with Federal law, we are satisfied that the present situation does not rise to that level (compare, Minton v Honda of Am. Mfg., 80 Ohio St 3d 62, 77, 684 NE2d 648, 659, supra [“Honda’s arguments of implied conflict preemption rest on the same faulty premise as its express-preemption argument, namely, that appellant’s claim somehow amounts to a state regulatory mechanism.”]).
To warrant implied “conflict” preemption a true conflict must necessarily be evident (see, Wilson v Pleasant, 660 NE2d 327, 337 [Ind 1995], supra). Neither the Safety Act nor Standard 208 prevented Toyota from including air bags in its 1991 Tercels. Toyota could have installed an air bag even though it was not required to do so by Federal law. Consequently, this injured plaintiff should not be deprived of the opportunity to establish in an appropriate court of law under higher State standards (something expressly reserved and contemplated in the Safety Act itself) that Toyota should have included a driver’s-side air bag because, for instance, it possessed the technology and because it was aware that the inclusion of an air bag would have been a better alternative safety device given the specific design of the car. This avenue would not produce or deviate from a universal, national standard; rather, it would constitute a surviving opportunity for resolution of a specifically contemplated factual scenario. The effect of a finding of liability would be to compensate the plaintiff for injuries proven ultimately to have been caused by a manufacturer’s knowing choice not to do something stricter under State law which, in fact, was specifically made optional under Federal law (see, Minton v Honda of Am. Mfg., supra, 80 Ohio St 3d, at 77-78, 648 NE2d, at 659-660).
Additionally, State law does not “ ‘stand [] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress’ ” (Freightliner Corp. v Myrick, 514 US 280, 287, supra, quoting Hines v Davidowitz, 312 US 52, 67, *52 supra). We reject the argument that “conflict” preemption is established because Congress’s general goal in enacting the Safety Act was to ensure uniformity of automotive safety regulations (compare, Harris v Ford Motor Co., 110 F3d 1410, 1412 [9th Cir], supra; Cellucci v General Motors Corp., 550 Pa 407, 415-416, 706 A2d 806, 810 [1998], supra). Courts have soundly rejected the position that uniformity by itself is an overriding purpose of the Safety Act, and thus justifies the preclusive effects associated with implied conflict preemption (Minton v Honda of Am. Mfg., supra, 80 Ohio St 3d, at 77-78, 648 NE2d, at 660 [1997]; Munroe v Galati, 189 Ariz 113, 117-118, 938 P2d 1114, 1118-1119 [1997], supra; Pokorny v Ford Motor Co., 902 F2d 1116, 1122-1123, supra; compare, Harris v Ford Motor Co., supra, 110 F3d, at 1416-1417 [Van Sickle, J., dissenting]).
The expressly declared purpose of the Safety Act was “to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents” (former 15 USC § 1381). While uniformity may have been a subsidiary goal for this enactment, it was not the primary overriding goal that would carry the forbidding consequences of implied conflict preemption (see, Pokorny v Ford Motor Co., supra, 902 F2d, at 1122 [“uniformity was not Congress’s primary goal in enacting the Safety Act * * * we are unwilling to accept an overly broad notion of preemption based on uniformity that could have the effect of undercutting Congress’s concern for safety”]; Harris v Ford Motor Co., supra, 110 F3d, at 1417 [Van Sickle, J., dissenting] [“(n)ational uniformity of motor vehicle safety standards is at most an ancillary goal, subordinate to the primary goal of improved motor vehicle safety”]). The uniformity argument is plainly insufficient in this case to supply the implied “conflict” preemption “kicker,” necessary to override the other express and controlling language of the Safety Act’s preemption and savings clauses, and the legislative history. We would go so far as to assert that an implied “conflict” preemption finding here might undermine the purpose and policies underlying the Safety Act and might contradict its express provisions (see, Wilson v Pleasant, 660 NE2d 327, 337 [Ind], supra). .
Contrary to the dissent’s characterization of the majority’s rationale, we nowhere say or imply that the savings clause generally overcomes implied conflict preemption (see, dissenting opn, at 67). Rather, we carefully conclude that the implied conflict preemption theory is not available in the instant case. Our reason is that recognition of plaintiffs’ State common-law claims here would neither render compliance with Federal law *53 “impossible” (i.e., there is no “actual conflict”), nor prevent the “accomplishment and execution” of Congress’s objective in enacting the Safety Act — “to reduce traffic accidents and death and injuries to persons resulting from traffic accidents” (Freightliner Corp. v Myrick, 514 US 280, 287, supra; former 15 USC § 1381). Thus, we reject the dissent’s suggestion that we are saying that the savings clause “allow [s] survival of a State tort claim actually in conflict with a Federal statutory or regulatory scheme” (see, dissenting opn, at 65). To the contrary, we find no actual conflict in the present case.
In sum, the 1966 Safety Act does not preclude the plaintiffs’ common-law claims. Congress amended Safety Standard 208 in 1984 to require passive restraints, but did not otherwise amend the Safety Act. Until Congress speaks more definitively and differently, we are satisfied that its express language in the Act itself provides sufficient guidance against preemptive features in these circumstances. To echo one Circuit Court of Appeals, “[a]bsent guidance, we have done as best we can with these difficult problems of preemption in a changing legal climate” (Wilson v Bradlees of New England, 96 F3d 552, 559 [1st Cir], cert denied sub nom. Union Underwear Co. v Wilson, 519 US 1149). Frankly, we, too, “should be especially reluctant to insulate administrative decisions from the prophylaxis of the civil jury, thereby placing common law protections beyond the reach of the motoring public” (Wood v General Motors Corp., 865 F2d 395, 419 [1st Cir] [Seyla, J., dissenting], supra).
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.