■ EVELYN KRAMER et al., Appellants, v BAUSCH & LOMB, INC., Respondent. [695 NYS2d 553] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered May 8, 1998, dismissing the complaint in its entirety, with prejudice, unanimously reversed, on the law, without costs, and the complaint reinstated, including the claims asserted individually and on behalf of the class.

Defendant is the manufacturer of three groups of eye-care products at issue. In each group is a product (the "a" line) identified as a saline solution intended for cleansing and conditioning contact lenses while they are not being worn. The "b" line in each group consists of a "rewetting" product designed to administer drops to the eye while the lenses are being worn. One of the groups also contains a "c" product which is an eye wash designed to cleanse the eye and relieve irritation while the lenses are not being worn.

The "a" line products are sold in containers ranging in size from 4 to 10 ounces, and the "c" product is sold in a 4-ounce container. The "b" line products are sold in small eye-drop dispensers ranging in size from 10 to 30 milliliters.[1] The ingredients of all of these solutions are chemically identical, although the wholesale prices of these product lines contrast dramatically. The "a" line products are marketed at $.18 to $1.42 per ounce, and the "c" line sells for $.71 per ounce, whereas the "b" line ranges at wholesale from $3.66 to $12.15 per ounce.

Plaintiffs allege that the labeling of these products disguises the "identicality" and interchangeability of the ingredients, and misleads the consumer into believing that the products are in fact different. Defendant is charged with creating the impression that these products should be used in conjunction with each other, notwithstanding the redundancy in ingredients.

Defendant moved in 1997 for summary judgment on the

---

1. A fluid ounce is approximately 29.57 milliliters.

ground of Federal preemption,[2] citing the premarket approval of these products by the Food and Drug Administration (FDA), a process designed to assure the safety and effectiveness of products prior to being marketed to the public (*see*, 21 CFR part 814). That motion was denied on the ground that neither the MDA nor the FDA's implementing regulations (21 CFR part 808) specifically preempted State or local requirements regarding these products. Following denial of that motion, defendant solicited an advisory opinion from the FDA (21 CFR 808.5) as to whether defendant's marketing practices constituted deceptive advertising. The Deputy Commissioner for Policy advised that the FDA would "not approve labeling of contact lens care products indicated for in-eye use that would state that such products are chemically identical and/or interchangeable with contact lens care products not intended for in-eye use." Safety concerns were expressed that the dispensing of the in-eye lubricating and rewetting drops from a larger container indicating identical ingredients on the label might risk contamination of the solution and consumer overuse of the product. Armed with this opinion, defendant renewed its summary judgment motion. During the pendency of that motion, a second advisory opinion was solicited, repeating in more detail the necessity of marketing these products separately, and opining that encouraging consumers to use different lines of these products in conjunction with each other without disclosing the identical nature of the ingredients would not be misleading. Based on this latest opinion, Supreme Court offered plaintiffs the option of proceeding only if they would withdraw their request for class action certification. When plaintiffs refused, the court granted defendant's motion for summary judgment.

As framed by the parties, the issue on this appeal is simply whether this lawsuit has been preempted by Federal law. We hold that it has not. As the Supreme Court initially ruled, there is nothing in the MDA or in the FDA's implementing regulations expressly preempting such a lawsuit (*see*, *Medtronic, Inc. v Lohr*, 518 US 470). Nor is there any implication of a Congressional intent to "occupy the field," thus precluding a common-law action (*see*, *Drattel v Toyota Motor Corp.*, 92 NY2d 35). Furthermore, a premarket approval procedure conducted under FDA regulations does not constitute an implied preemption of civil litigation (*Sowell v Bausch & Lomb*, 230 AD2d 77).

**2.** Under the 1976 Medical Device Amendments (MDA) to the Federal Food, Drug and Cosmetic Act of 1938 (21 USC § 360c *et seq.*).

As the Supreme Court early recognized, the purpose of the MDA was to monitor a product's safety and effectiveness, and not its marketing under allegedly unfair trade practices (see, 21 CFR 808.1 [d] [1]). The FDA advisor may have been technically correct to opine that a consumer should not be encouraged to use in his eyes a solution from a 10-ounce bottle that should properly be dispensed one drop at a time, and that it is appropriate for defendant to recommend the contemporaneous use of both products, which are compatible. But that advisor stepped outside his effective jurisdiction when he purported to decide that the consumer public should be denied the right to conclude that the ingredients of the various lines are identical. The advisor stated in his opinion that the FDA "would not permit" a manufacturer to disclose, in labeling, packaging or advertising, that "an in-eye use contact lens care product, such as rewetting drops * * * is *chemically identical to* or *interchangeable with* a contact lens care product such as saline, cleaning or conditioning solution" (emphasis added). That opinion was appropriate because such a statement might very well encourage misuse of the product. But the consumer public might have a right to appreciate the identicality of the ingredients in these products, so that using an eye-dropper to dispense the solution marketed in the large-size container would cause no harm and accomplish the same purpose, at considerable cost savings. Of course, it is also possible that defendant might prove the added cost of the "b" line product to be justified by packaging it in handy, but more expensive, eye-drop dispensers. But that is more properly a question for the trier of facts.

The FDA advisory opinions were not indicia of preemption of this cause, as a matter of law. Supreme Court erred in forcing plaintiffs to relinquish their class certification as a condition for proceeding with this action. Concur—Ellerin, P. J., Wallach, Lerner and Friedman, JJ.