**Tina Louise JEFFERS, Plaintiff,**

v.

**WAL–MART STORES, INCORPORATED, et al., Defendants.**

**No. CIV.A. 3:99–0274.**

United States District Court, S.D. West Virginia, Huntington Division.

Oct. 31, 2001.

John H. Skaggs, David H. Carriger, The Law Offices of Stuart Calwell, PLLC, Charleston, Counsel for Plaintiff.

James D. McQueen, Jr., Regenia L. Mayne, McQueen, Harmon & Murphy, L.C., Charleston, Counsel for Wal–Mart, Inc.

Thomas E. Scarr, Jenkins Fenstermaker, Huntington, Counsel for United Industries Corporation.

Marc Williams, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, Counsel for DOW Agrosciences, LLC.

Dean T. Barnhard, Joseph G. Eaton, Barnes & Thornburg, Indianapolis, IN, Counsel for DOW Agrosciences, LLC.

Michael M. Fisher, Offutt Fisher & Nord, Charleston, Counsel for C.L. Smith Container Company.

## MEMORANDUM OPINION AND ORDER

CHAMBERS, District Judge.

Plaintiff's Second Amended Complaint asserts several state common law claims against Dow Agrosciences LLC (Dow). Dow is the manufacturer of Dursban HF, a pesticide product used in retail pest control products, including some Spectracide products to which plaintiff alleges she was exposed. In Count III ("Liability of Product Manufacturers"), plaintiff claims negligence in the design, manufacture, packaging and distribution of pesticide products; failure to warn; failure to provide knowledge of safeguards; negligent packaging and handling, including the failure to warn; and negligent design of the packaging. Count IV alleges the manufacturer breached warranties of fitness and merchantability in that the packaging and warnings were inadequate. Count V asserts strict liability based on defective design, manu-

facture and use, again identifying the packaging and warnings.[1]

Dow groups plaintiff's claims into three categories and moves for summary judgment as to each. First, Dow seeks partial summary judgment in its favor as to all warning and labeling claims based on express pre-emption. Next, Dow asserts that Plaintiff's design defect claims should be dismissed because they are subject to implied conflict pre-emption. Last, Dow argues that Plaintiff's packaging claims should be dismissed because there is no evidence that Dow designed, made or distributed the packaging at issue.

Following extensive briefing on these issues, the Court entertained oral argument and received supplemental material from Plaintiff and Dow. The Court compliments counsel for their presentations in both written and spoken form. Having considered the issues, the Court GRANTS Dow's Motion for Partial Summary Judgment on Plaintiff's labeling claims, DENIES Dow's Motion for Summary Judgment on Plaintiff's design defect claim, and GRANTS Dow's Motion for Partial Summary Judgment on Plaintiff's packaging claims.

## I. Plaintiff's Labeling Claims

█ Throughout Plaintiff's Second Amended Complaint, Plaintiff alleges that product manufacturers, including Dow, failed to provide adequate warnings and knowledge of risks and safeguards to persons who may be expected to handle these pesticide products. In particular, Plaintiff claims that the warnings failed to advise of hazards associated with mixing these products with other substances. The parties apparently agree that the EPA-approved label was affixed to the product. Dow

---

1. While the parties do not agree as to which specific pesticide products plaintiff may have been exposed, for the purposes of these mo-

tions, the Court assumes that plaintiff was exposed to Dow's Dursban HF pesticide in some form.

relies upon the express pre-emption language of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U .S.C. § 136v(b) (2001), which the Court previously applied to Plaintiff's earlier claims against United Industries, another product manufacturer defendant in this action. *See Jeffers v. Wal–Mart,* 84 F.Supp.2d 775 (2000). Pointing out that the claims against it are nearly identical to those asserted against United Industries, Dow asks the Court for the same result. Plaintiff offers no resistance.

For the reasons stated in this Court's previous Order, the Court GRANTS Dow's motion for partial summary judgment on Plaintiff's labeling claims. All claims of the Plaintiff against Dow based upon the adequacy of the warnings, instructions, or labeling are expressly pre-empted under FIFRA.

## II Plaintiff's Design Defect Claims

Dow asserts the defense of conflict pre-emption as a bar to plaintiff's claims of design defect. At this stage of the proceedings and for purposes of this motion, the Court assumes without deciding that plaintiff's design defect claims are premised on factual grounds distinct from her labeling and packaging claims. She argues that Dursban HF is defective under state products liability law, even if it was made and labeled in conformity with FIFRA's registration and labeling requirements, because some humans are particularly, but unknowingly, susceptible to certain deleterious effects of exposure.

■ State laws may be displaced by federal law where Congress expressly pre-empts state law, where federal law by implication pre-empts the field,[2] or where state law conflicts with federal law. *Lorillard Tobacco Co. v. Reilly,* —— U.S. ——,

121 S.Ct. 2404, 150 L.Ed.2d 532 (2001). Where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, federal law prevails. *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). Pre-emption occurs whether the conflict is such that the state law prevents or frustrates the accomplishment of the federal objective or compliance with both is impossible. *Geier v. American Honda Motor Co.,* 529 U.S. 861, 873, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). While express pre-emption and field pre-emption are found by reference to congressional intent, conflict pre-emption does not depend upon an expression of legislative intent to pre-empt. Even where a federal law includes a stated measure of express pre-emption, a court must look beyond it to determine the full pre-emptive effect of the law. The inclusion of express pre-emption provisions (7 U.S.C. § 136v(b)), here limited to labeling and packaging requirements, does not preclude implied conflict pre-emption. *Freightliner Corp. v. Myrick,* 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995). Likewise, the presence of a saving clause conditioning the scope of express pre-emption does not foreclose the possibility of conflict pre-emption. *Geier,* 529 U.S. at 869, 120 S.Ct. 1913. Even the combination of both express pre-emption and a savings clause imposes no special burden to prevent the operation of ordinary conflict pre-emption. *Id.* at 870, 120 S.Ct. 1913.

■ Dow posits a detailed recitation of federal statutory and regulatory provisions in support of its fundamental assertion that EPA, through its authority under FIFRA, has expressly found Dursban HF to be reasonably safe by approval of its regis-

---

**2.** *Worm v. American Cyanamid Co.,* 970 F.2d 1301 (4th Cir.1992) *(Worm I)* rejected the notion that Congress pre-empted the field of

pesticide regulation, and Dow does not argue to the contrary here.

tration application and label. Dow lists the extensive data and studies an applicant must submit to EPA in the registration process, upon which EPA relies in deciding to register the pesticide and approve the label which must accompany the product. According to EPA's regulations, once it registers the product and approves its label, the "registrant may distribute or sell a registered product with the composition, packaging, and labeling currently approved by the Agency." 40 C.F.R. § 152.130 (2001).[3] Dow points out that it provided EPA with the precise composition for Dursban HF, along with toxicological and other scientific data required by EPA, and that EPA registered the product and approved its label, allowing the product to be sold. Relying on several provisions of the Act (*see* 7 U.S.C. § 136a(c)(5) and § 136(bb)), Dow argues EPA's approval precludes any state law tort claim that the product is unreasonably dangerous. According to Dow, EPA has expressly concluded that this product produces no unreasonable adverse effects when used in conformity with the label.

While conflict pre-emption analysis does not depend upon an express statement of congressional intent to pre-empt, congressional purpose defines the scope and nature of federal statutory or regulatory provisions against which the state law must be measured. To determine whether a conflict exists, a court must first consider the purpose of the federal law, as the Supreme Court has consistently done in the leading cases on this issue. In *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), the Court refused to apply conflict pre-emption to ban state tort law claims, citing certain congressional amendments to the federal regulation of

nuclear energy safety. These changes in the statutory scheme implied congressional awareness of continuing state law claims against the regulated industry. Despite extensive federal regulation of nuclear energy through the Nuclear Regulatory Commission, the Court found that state tort damages were nonetheless available:

No doubt there is tension between the conclusion that safety regulation is the exclusive concern of the federal law and the conclusion that a state may nevertheless award damages based on its own law of liability. But as we understand what was done over the years in the legislation concerning nuclear energy, Congress intended to stand by both concepts and to tolerate whatever tension where was between them. We can do no less. It may be that the award of damages based on the state law of negligence or strict liability is regulatory in the sense that a nuclear plant will be threatened with damages liability if it does not conform to state standards, but that regulatory consequence was something that Congress was quite willing to accept.

*Id.* at 256, 104 S.Ct. 615. When the Court considered FIFRA in *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991), and rejected field pre-emption, the Court also rejected conflict pre-emption of local government regulations by focusing on the statute's goals, noting that FIFRA implies a partnership among federal, state and local governments. The Court stated: "Once more, isolated passages of legislative history that were themselves insufficient to establish a preemptive congressional intent do not by

---

**3.** Earlier versions of this regulation did not include the word "composition." EPA added this word when a number of other amendments were made to the regulations; however, Dow offers no explanation for the change and the Court found none in EPA's regulations or accompanying commentary.

themselves establish legislative goals with pre-emptive effect." *Id.* at 616, 111 S.Ct. 2476.[4]

The Fourth Circuit also examined congressional purpose behind FIFRA in determining the reach of conflict pre-emption in a context similar to this case. *Worm v. American Cyanamid Co.,* 970 F.2d 1301 (4th Cir.1992) (*Worm I* ). Judge Niemeyer pointed out the provisions of 7 U.S.C. § 136v(a) and (b) in considering whether conflict pre-emption barred state tort law damage claims. If, to comply with state law, a pesticide registrant ". . . must violate federal law," or in complying with state law, the objectives and purposes of federal law would be frustrated, "the state law must yield." *Worm I,* 970 F.2d at 1306. The court noted some of the specific claims there, including state-imposed standard of care claims relating to product design and testing, were not pre-empted. While the opinion does not explicitly reveal whether the registrant cited § 136a(c)(5) or the other provisions now asserted by Dow, the court expressly rejected conflict pre-emption of state tort claims arising from negligent design, testing, and even some labeling matters. Although the Supreme Court has continued to explain the law of conflict pre-emption in more recent cases, *Worm I* cannot be ignored nor discarded as readily as Dow advocates.

Much of the difficulty in this case arises from the Supreme Court's internal debate over the implications, for conflict pre-emption analysis, of express pre-emption provisions within the statute. In *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 518, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the Court determined the pre-emptive scope of federal cigarette labeling and advertising legislation by examining its express pre-emption provisions.[5] Because pre-emption was explicitly addressed in the statute, reliably indicating congressional intent with respect to state authority, the Court did not extend pre-emptive effect to bar state law claims. Subsequent cases raised doubt about the vitality of this analysis. For instance, in *Freightliner Corp.,* the Supreme Court examined conflict pre-emption in the context of the National Traffic and Motor Vehicle Safety Act of 1966 (the Safety Act) by which Congress empowered the Secretary of Transportation to adopt regulations setting safety standards for vehicles. The Act's broad express pre-emption provisions did not apply to plaintiff's claims because no relevant regulations had been issued. Turning to the argument of conflict pre-emption, the Court read *Cipollone* narrowly: "The fact that an express definition of the pre-emptive reach of a statute 'implies'—*i.e.,* supports a reasonable inference—that Congress did not intend to pre-empt other matters does not mean that the express clause forecloses any possibility of implied pre-emption."

---

**4.** Significantly, *Mortier* also stated, in discussing field pre-emption, that "FIFRA nowhere seeks to establish an affirmative permit scheme for the actual use of pesticides. It certainly does not equate registration and labeling requirements with a general approval to apply pesticides throughout the Nation without regard to regional and local factors like climate, population, geography, and water supply." *Id.* at 613–614, 111 S.Ct. 2476. If this Court accepted Dow's position, its registration and label would equate to the general approval rejected in *Mortier.*

**5.** The Court has not always applied Justice Stewart's "presumption against pre-emption" although a majority joined him in Parts III and IV in *Cipollone,* when he stated ". . . we must construe these provisions in light of the presumption against the pre-emption of state police power regulations." Dow argues that no presumption applies in conflict pre-emption analysis, but this Court disagrees based on the language in *Cipollone* and in the more recent *Buckman* decision, cited below, observing, at page 1017, that "no presumption against pre-emption obtains . . . *in this case.*" (emphasis added)

*Freightliner Corp.*, 514 U.S. at 288, 115 S.Ct. 1483.

In *Geier* the Court returned to the Safety Act and its pre-emptive effect. Finding that conflict pre-emption applied, the Court discussed the analysis of conflict pre-emption where express pre-emption provisions and a saving clause were part of the statutory scheme. The Court found neither the saving clause nor the express pre-emption provisions "bar" the ordinary working of conflict pre-emption principles. The Court then returned to the basic question of whether the state law claim conflicted with the federal safety standard, focusing on the purpose of FMVSS 208 and the intent of the Department of Transportation. Permitting the state law claim to proceed would have created an obstacle to the very purpose of the standard, that being a performance standard which deliberately allowed manufacturers to choose from a mix of different passive restraints. The state law duty asserted would require airbags on all vehicles, penalizing manufacturers who chose one of the alternatives which FMVSS 208 was designed and issued to encourage.

In its most recent opinion addressing conflict pre-emption, *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001), the Court reaffirmed *Geier's* treatment of an express pre-emption provision. But in determining whether conflict pre-emption applied, the Court first noted the claim of "fraud against a federal agency" contrasted with situations implicating "federalism concerns and historic primacy of state regulation of matters of health and safety." *Buckman*, 121 S.Ct. at 1017. The federal scheme regulating medical devices empowered the FDA to punish and deter fraud

against it and contemplated a "delicate balance" controlled by the agency.[6] Allowing "fraud against the agency" claims would interfere with that balance and the federal interest behind it.

With these principles in mind, this Court finds that conflict pre-emption does not apply to plaintiff's design defect claims. The limited express pre-emption provision does not "foreclose" the operation of ordinary conflict pre-emption principles, but neither must it be ignored in the analysis. That analysis is peculiar to the statutes in question and must be resolved by guidance as to the legislative purpose behind the federal law. The limited nature of FIFRA's express pre-emption implies, even though it does not establish, that Congress did not intend to pre-empt more. The combination of the substantive goals and purpose of FIFRA with its express pre-emption limited to packaging and labeling counsels against finding conflict pre-emption.

The registration of a pesticide by EPA is not a performance standard like that found in *Geier*. Dow is not obligated to formulate Dursban HF according to some EPA-imposed composition. Rather, it is Dow's burden to design its product, obtain and submit the data and studies required by EPA, and develop the appropriate label to instruct proper use. EPA depends upon the applicant to perform the tests, assemble the studies, and provide the data upon which EPA relies in registering the product and approving the label. EPA does not independently test, study, or otherwise set particular composition standards for the pesticides. EPA's approval, including the general finding of no measurable adverse affects, does not dictate to

---

**6.** *Buckman* found *Silkwood* distinguishable because the latter involved traditional state tort law principles, not a claim based on fraud against the federal agency. *Buckman*, 121 S.Ct. at 1019. This distinction, important enough to be noted in *Buckman*, is relevant here.

Dow a particular composition; it merely allows Dow to market what Dow has developed and requires it to conform the composition and label to that which Dow has obtained approval. Furthermore, FIFRA and EPA's regulations impose a duty to provide extensive post-registration material bearing on the risks associated with the use of the product. FIFRA authorizes EPA to require additional data to maintain an existing registration (§ 136a(c)(2)(B)); to change a classification to prevent unreasonable adverse effects (§ 136a(d)(2)), and to conduct re-registration review (§ 136a(g)). EPA also retains authority to cancel, deny or modify registration· or labels. 7 U.S.C. § 136d(b). By its regulation, 40 C.F.R. § 152.125, EPA requires a registrant who "receives or becomes aware of any factual information regarding unreasonable adverse effects" to provide it to EPA. The regulations require post-registration submission of studies and data, including "incidents affecting humans," dealing with toxicology or adverse effects. 40 C.F.R. §§ 159.152–195 (2001). These and other provisions make clear that EPA's decision to register a pesticide and approve its label is subject to revision as new relevant data is reported. *(See also* 40 C.F.R. § 152.164(b) (classification reviews) and Part 154 (special review procedures)). EPA may suspend or cancel registration or reclassify its use based on new data or studies. These provisions recognize that, notwithstanding EPA's approval of the registration and label, unreasonable adverse effects may result from use of the pesticide and EPA may reexamine its approval. The Court perceives no reason to find that a state tort law claim, based on product liability duties to design a product by eliminating unreasonable dangers, stands as an obstacle to the goal of Congress and EPA—to allow the sale and use of pesticides which do not pose a risk of unreasonable adverse effects on humans. It is not physically impossible to comply with both FIFRA and state law duties because EPA does not restrict Dow to a particular composition; EPA's regulations simply require its approval for any changes. None of the regulations reveal any agency interpretation, like that in *Geier,* indicating pre-emption of state law claims.

The language in § 136v(a) reinforces this conclusion. As noted in *Worm I* and *Mortier,* FIFRA contemplates a partnership which includes states retain their traditional powers, including common law duties of product manufacturers. This section, entitled Authority of the States, is integral to that partnership—it expressly permits states to regulate the sale and use of EPA-registered pesticides.[7] West Virginia could ban the sale or use of Dursban HF, or otherwise restrict its sale or use, without running afoul of FIFRA. Yet, Dow emphasizes EPA's registration gives it permission to sell Dursban HF with its approved composition. Dow's theory of conflict pre-emption would prohibit the states from enforcing any restrictions or other condition which would prevent Dow from "doing what the federal regulations authorized it to do." Plaintiff's design defect claims, in Dow's view, would impose state liability for doing that which the fed-

7. "The specific grant of authority in § 136v(a) consequently does not serve to hand back to States powers that the statute had impliedly usurped. Rather, it acts to ensure that the States could continue to regulate use and sales even where... a narrow pre-emptive overlap might occur." *Mortier,* at 614, 111 S.Ct. 2476. The parties do not characterize this section as a saving clause, but the Court disagrees. However, the Court finds it unnecessary to resolve this characterization or to construe the meaning § 136v because its import to this decision is not in any literal application to this case, but in the implication it supports about the nature and scope of FIFRA.

eral law authorizes it to do. This position skews the real meaning behind *Geier* and *Fidelity Federal Savings & Loan v. De la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), a case cited by Dow. In each case federal regulations gave defendants choices (to use a restraint system other than an airbag and to add a "due on sale" clause) which served the federal interests protected by conflict pre-emption. Here, EPA's registration and label approval serve the federal interest of minimizing the risks of adverse environmental effects which may occur from the use of pesticides created by Dow and other manufacturers. State law claims holding Dow accountable for unreasonably dangerous effects serves, and does not conflict with, that goal. Dow cannot rely on express pre-emption or field pre-emption to sweep away these state law claims, and the Court will not permit it to do so in an equally broad stroke based on conflict pre-emption.

For these reasons, the Court **DENIES** Dow's motion for partial summary judgment on plaintiff's design defect claims.

### III  Plaintiff's Packaging Claims

■ A recurring and central allegation in Plaintiff's Second Amended Complaint is that the packaging of these retail pesticide products was inadequate. Simply stated, Plaintiff believes the bottles containing the pesticide products were inadequate or defective, causing the contents to spill when the bottles fell from a shelf. Plaintiff has consumed much of her time and effort in discovery trying to identify who designed and manufactured the bottles.[8] Here, Dow's motion for partial summary judgment relies on its assertion that Plaintiff has no facts to support a packaging claim against Dow. Specifically Dow points to United Industries' responses to

Plaintiff's discovery requests identifying C.L. Smith Co. as the packaging manufacturer, and the affidavit of Mr. Jachetta, Dow's regulatory manager for Dursban, stating flatly that Dow did not design, manufacture, distribute or sell the packaging at issue.

Plaintiff responds with a plea for more discovery. Conceding that the evidence identifies C.L. Smith Co. as the packaging manufacturer, Plaintiff nonetheless argues that more discovery could produce evidence that Dow somehow participated in the design of the packaging. Plaintiff notes that from another lawsuit over Dursban, she obtained evidence showing that Dow provided some degree of advice relating to packaging in its "Formulator's Manual." However, Plaintiff has no evidence that Dow contributed to the design of the packaging in this case, despite lengthy discovery from United Industries and significant discovery from Dow. None of the contested discovery from Dow relates to packaging and none has been initiated by Plaintiff during the pendency of these motions. Plaintiff cannot cite any evidence to contradict Jachetta's affidavit. At this late stage, Plaintiff has had a reasonable opportunity to conduct sufficient discovery to counter the motion, but failed to do so. Dow's motion for partial summary judgment as to plaintiff's packaging claims is **GRANTED.**

The Clerk is directed to forward a copy of this Order to counsel of record and any unrepresented parties and to publish this Memorandum Opinion and Order on the Court's website.

---

8. See this Court's Order of July 19, 2001 dismissing C.L. Smith Co. for lack of personal jurisdiction.