January 22, 2008

Mr. Thomas A. Davis, Jr., Director
Texas Department of Public Safety
Post Office Box 4087
Austin, Texas 78773-0001

Opinion No. GA-0598

Re: Whether section 521.032, Transportation Code, which permits the Department of Public Safety to issue an enhanced driver's license or personal identification certificate for the purpose of crossing the border between Texas and Mexico conflicts with federal law (RQ-0610-GA)

Dear Mr. Davis:

Enacted by the Eightieth Legislature as part of a homeland security measure, section 521.032 of the Transportation Code authorizes the Texas Department of Public Safety (the "Department") to "issue an enhanced driver's license or personal identification certificate for the purposes of crossing the border between [Texas] and Mexico." TEX. TRANSP. CODE ANN. § 521.032 (Vernon Supp. 2007). You ask whether section 521.032 conflicts with current federal law.[1]

## I.     Section 521.032, Texas Transportation Code

Section 521.032 authorizes the Department to issue an enhanced driver's license that can be used to cross the border between Texas and Mexico. *See id.* Section 521.032 provides that an enhanced driver's license or personal identification certificate may be issued to "an applicant who provides . . . proof of United States citizenship, identity, and state residency." *Id.* The section also requires biometric identifiers of applicants as well as security measures to protect information included in the enhanced driver's license or personal identification certificate. *See id.* § 521.032(b) (requiring one-to-many biometric matching system[2] and limiting use of same), (c) (requiring reasonable security measures for privacy and protection against unauthorized disclosure and

---

[1]*See* Letter from Mr. Thomas A. Davis, Jr., Director, Texas Department of Public Safety, to Honorable Greg Abbott, Attorney General of Texas, at 1–3 (July 26, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]*See* TEX. GOV'T CODE ANN. § 560.001(1) (Vernon 2004) (defining "biometric identifier" as a "retina or iris scan, fingerprint, voiceprint, or record of hand or face geometry").

requiring encryption of any included radio frequency identification chips[3]).  Section 521.032 authorizes the Department to adopt rules necessary to implement the section.  *See id.* § 521.032(d). And it requires the Department to monitor technological innovations related to security and to amend its rules as appropriate to protect the privacy of individuals holding an enhanced driver's license or personal identification certificate.  *See id.*

Section 521.032 authorizes the Department to "enter into a memorandum of understanding with any federal agency for the purposes of facilitating the crossing of the border between this state and Mexico."  *Id.* § 521.032(f).  Section 521.032 further authorizes the Department to "enter into an agreement with Mexico, to the extent permitted by federal law, to implement a border crossing initiative authorized by this section."  *Id.*

## II.    Federal Preemption

You ask whether section 521.032 conflicts with current federal law.[4]  *See* Request Letter, *supra* note 1, at 3.  The issuance of driver's licenses has typically been a function of the individual states.  *See State v. Wilder*, 67 P.3d 839, 841 (Idaho Ct. App. 2003) (stating that driver's license requirement is legitimate exercise of state's police power); *see also, e.g.*, TEX. TRANSP. CODE ANN. § 521.021 (Vernon 2007) (requiring state-issued driver's license to operate motor vehicle on highway in state); ALA. CODE § 32-6-1(a) (2007) (same); CAL. VEH. CODE § 12500(a) (2007) (same); DEL. CODE ANN. tit. 21, § 2701(a) (2007) (same); IDAHO CODE ANN. § 49.301 (2007) (same).  But to the extent an enhanced driver's license issued under section 521.032 would permit a United States citizen to cross the border between Texas and Mexico, the section intersects with federal authority over the nation's borders.  *See United States v. Glasser*, 750 F.2d 1197, 1201 (3rd Cir. 1984) ("It cannot be questioned that Congress has plenary power to police the borders of the United States.") (citing *United States v. 12 200-Ft. Reels of Film*, 413 U.S. 123 (1973)).  And under the Supremacy Clause of the United States Constitution, state law that conflicts with federal law is preempted and without effect.  U.S. CONST. art. VI, cl. 2; *Maryland v. Louisiana*, 451 U.S. 725, 745–46 (1981); *see La. Pub. Serv. Comm'n v. Fed. Commc'ns Comm'n*, 476 U.S. 355, 369 (1986) (stating that "a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation").

There are three ways in which a state law may be preempted.  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992); *Delta Air Lines v. Black*, 116 S.W.3d 745, 748 (Tex. 2003).  Federal law may expressly preempt state law.  *Cipollone*, 505 U.S. at 516.  Federal law may impliedly

---

[3]*See Leighton Tech. LLC v. Oberthur Card Sys., S.A.*, 358 F. Supp. 2d 361, 364 (S.D.N.Y. 2005) (describing radio frequency identification (RFID) technology as the "basis for the so-called 'smart card,' a plastic card that includes an electronic element (such as a computer chip) and a reader, and that is used in numerous common applications including security swipe cards, credit/debit cards, mass transit access, toll collection (EZ-Pass), and government identification").

[4]In presenting your question, you provide information and argument with respect to only federal passport requirements, and thus, we limit our analysis to such requirements.  *See* Request Letter, *supra* note 1, at 1–3 (discussing provisions of federal passport law and the Western Hemisphere Travel Initiative).

preempt state law if the scope of the federal statute or regulations indicates that Congress intended to occupy the field exclusively. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). Federal law may also impliedly preempt state law when there is an actual conflict between the federal and state law such that "it is 'impossible for a private party to comply with both federal and state requirements,' or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990)).

### III.     Federal Passport Requirements

Current federal law requires that a United States citizen have a valid United States passport to "depart from or enter, or attempt to depart from or enter, the United States." Immigration and Nationality Act § 215, 8 U.S.C.A. § 1185(b) (West 2005 & Supp. 2007); Passport Requirement and Exceptions, 22 C.F.R. § 53.1(a) (2007). Exceptions to the passport requirement for United States citizens, contained in the Department of State regulations, currently provide that a United States citizen may enter and depart the United States without a passport:

> (b)   When entering from or departing to a foreign port or place within the Western Hemisphere, excluding Cuba, by land or sea; or

> . . .

> (f)   When the U.S. citizen bears another document, or combination of documents, that the Secretary of Homeland Security has determined under Section 7209(b) of Pub. L. 108-458 (8 U.S.C. 1185 note) to be sufficient to denote identity and citizenship; . . . .

Passport Requirement and Exceptions, 22 C.F.R. § 53.2(b), (f) (2007).

The passport requirement exceptions are being revised in a joint Department of Homeland Security (the "DHS") and Department of State (the "DOS") two-stage rulemaking.[5] This two-stage joint DHS and DOS plan is described as the Western Hemisphere Travel Initiative, or WHTI.[6] Under the first stage, effective January 23, 2007, United States citizens arriving into or departing from the United States at an *air* port-of-entry must have a valid United States passport. *See* Passport

---

[5]*See generally* Documents Required for Travelers Arriving in the United States at Air and Sea Ports-of Entry From Within the Western Hemisphere, 71 Fed. Reg. 46,155 (proposed Aug. 11, 2006); Documents Required for Travelers Departing From or Arriving in the United States at Air Ports-of-Entry From Within the Western Hemisphere, 71 Fed. Reg. 68,412 (Nov. 24, 2006); Documents Required for Travelers Departing From or Arriving in the United States at Sea and Land Ports-of-Entry From Within the Western Hemisphere, 72 Fed. Reg. 35,088 (proposed June 26, 2007).

[6]*See* 71 Fed. Reg. 46,155, 46,157 (proposed Aug. 11, 2006); 72 Fed. Reg. 35,088, 35,090 (proposed June 26, 2007).

Requirement and Exceptions, 22 C.F.R. § 53.2(b) (exception for only land and sea).[7] And under the second stage expected to be final in the summer of 2008, United States citizens traveling to or from the United States by *land or sea* ports-of-entry from countries within the Western Hemisphere will also be required to possess a valid United States passport.[8]

The two-stage joint DHS and DOS rulemaking under WHTI, however, is anticipated to leave in place the current passport requirement exception that permits entry into and departure from the United States

> [w]hen the U.S. citizen bears another document, or combination of documents, that the Secretary of Homeland Security has determined under Section 7209(b) of Pub. L. 108-458 (8 U.S.C. 1185 note) to be sufficient to denote identity and citizenship[.]

*Id.* § 53.2(f).[9]  The referenced section 7209(b) of Public Law 108-458 (hereinafter "section 7209(b)"), codified as a note accompanying section 8 U.S.C. § 1185, requires the Secretary of Homeland Security and the Secretary of State to

> develop and implement a plan as expeditiously as possible to require a passport *or other document*, or combination of documents, deemed by the Secretary of Homeland Security to be sufficient to denote identity and citizenship, for all travel into the United States by United States citizens; . . . .

8 U.S.C.A. § 1185 note (West Supp. 2007) (Intelligence Reform and Terrorism Prevention Act of 2004) (emphasis added).[10]  Section 7209(b) further requires, among other things, certification from the Secretary of Homeland Security and the Secretary of State regarding

> the signing of a memorandum of agreement to initiate a pilot program with not less than one State to determine if an enhanced driver's license, which is machine-readable and tamper proof, not valid for certification of citizenship for any purpose other than admission into the United States from Canada or Mexico, and issued by such State to an individual, may permit the individual to use the driver's license

---

[7]*See also* 71 Fed. Reg. 68,412, 68,414 (Nov. 24, 2006).

[8]*See* 72 Fed. Reg. 35,088, 35,096 (proposed June 26, 2007) (to be codified at 53.2(b)(2)) (providing limited exception for passport requirement for United States citizens departing and entering the United States aboard pleasure cruise ship).

[9]*See also* 72 Fed. Reg. 35,088, 35,116 (proposed June 26, 2007) (to be codified at 22 C.F.R. § 53.2(f)).

[10]Pub. L. No. 108-458, Title VII, § 7209, Dec. 17, 2004, 118 Stat. 3823, *as amended by* Pub. L. 109-295, Title V, § 546, Oct. 4, 2006, 120 Stat. 1383; *and* Pub. L. 110-53, Title VII, § 723, Aug. 3, 2007, 121 Stat. 349.

> to meet the documentation requirements under subparagraph (A) for entry into the United States from Canada or Mexico at land and sea ports of entry.

*See* Intelligence Reform and Terrorism Prevention Act of 2004, *supra* note 10 (to be codified at 8 U.S.C. § 1185 note § 7209(b)(1)(B)(viii)).[11]

## IV.    Analysis

With this background regarding the evolving federal passport requirement framework, we address your question regarding whether section 521.032 of the Texas Transportation Code conflicts with federal law regarding passports and is thus preempted. A critical question in any preemption analysis is whether Congress intended the federal regulation to supersede state law. *La. Pub. Serv. Comm'n*, 476 U.S. at 369. Under express preemption, the federal statute or regulation must clearly state that its provision preempts state law. *Cipollone*, 505 U.S. at 516. Neither the federal statute, 8 U.S.C. § 1185 contained in the Immigration and Nationality Act, nor the regulations adopted under the statute contain any language expressly preempting state law. *See* 8 U.S.C.A. § 1185 (West 2005 & Supp. 2007); *see also id.* §§ 1101–1537 (Immigration and Nationality Act); Passport Requirement and Exceptions, 22 C.F.R. pt. 53 (2007). Absent such language, express preemption is not an issue here.

Federal law may also impliedly preempt state law if Congress intended to occupy the field, if there is an actual conflict between the federal law and the state law, or if state law stands as an obstacle to the federal purpose. *Freightliner Corp.*, 514 U.S. at 287. In the analysis involving implied preemption we again look to Congress's intent. *La. Pub. Serv. Comm'n*, 476 U.S. at 369. Entry into or departure from the United States involves the nation's borders. And authority to regulate the nation's borders is exclusive to Congress. *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985) (citing *Boyd v. United States*, 116 U.S. 616, 623 (1886)); *Glasser*, 750 F.2d at 1201 (citing *12 200-Ft. Reels of Film*, 413 U.S. at 126). In the Immigration and Nationality Act, of which the passport requirement in 8 U.S.C. § 1185(b) is a part, Congress has enacted a comprehensive scheme regulating the nation's borders. *See* 8 U.S.C.A. §§ 1101–1537 (West 2005 & Supp. 2007). Congress has established limitations on immigration levels. *See id.* §§ 1151–1152. It has provided for immigrant visas and immigrant asylum. *See id.* §§ 1153, 1156, 1158, 1201. Congress has also set forth admission qualifications and travel requirements. *See id.* §§ 1181–1189. And, it has enacted provisions regarding removal of persons illegally in the United States as well as penalty provisions. *See id.* §§ 1221–1231, 1401–1489. Governing all aspects of border control, including the ability of citizens to lawfully travel to and from the United States, the Immigration and Nationality Act is clearly a pervasive and comprehensive enactment that reveals a Congressional intent to exercise extensive control over the nation's borders.

In that comprehensive scheme, however, Congress affirmatively calls for state regulatory involvement. *See* Intelligence Reform and Terrorism Prevention Act of 2004, *supra* note 10 (to be

---

[11]*See also* 72 Fed. Reg. 35,088, 35,095–096 (proposed June 26, 2007) (to be codified at 53.2(b)(2)).

codified at 8 U.S.C. § 1185 note) (section 7209(b)(1)(B)(viii) requiring "the signing of a memorandum of agreement to initiate a pilot program with not less than one State to determine if an enhanced driver's license . . . may permit the individual to use the driver's license to meet the documentation requirements . . . for entry into the United States"). Pursuant to its directive to the DHS and the DOS in section 7209(b), Congress envisioned the development of a plan wherein documents, other than passports, denoting citizenship and identity could serve as documents authorizing United States citizens to travel across the border. *See* 8 U.S.C.A. § 1185 note § 7209(b)(1)(A) (West Supp. 2007). And, Congress provided that a state-issued enhanced driver's license could serve as a possible alternative document. *See* Intelligence Reform and Terrorism Prevention Act of 2004, *supra* note 10 (to be codified at 8 U.S.C. § 1185 note § 7209(b)(1)(B)(viii)). This express language indicates a Congressional intent that state-issued driver's licenses issued in compliance with section 7209(b) could be a component of the WHTI plan implemented by the DHS and the DOS. And an enhanced driver's license issued under a state law enacted in conformance with section 7209(b) would not only further federal objectives, it would permit a private party to comply with both federal and state requirements. We find no indication that Congress intended to impliedly preempt a state law authorizing a state-issued enhanced driver's license that conformed to section 7209(b). Accordingly, a state law that provides for such driver's licenses would not on its face conflict with, and would not be preempted by, federal law regarding passports.

Section 521.032 would conflict with federal law regarding passports only if it authorizes an enhanced driver's license that does not conform to section 7209(b). Section 7209(b) requires the alternative document or combination of documents to be machine-readable and tamper proof. *Id.* It further requires the document or combination of documents to be sufficient to denote citizenship and identity as determined by the Secretary of Homeland Security. 8 U.S.C.A. § 1185 note § 7209(b)(1)(A) (West Supp. 2007). Section 521.032 requires an applicant for an enhanced driver's license to provide proof of citizenship and identity. TEX. TRANSP. CODE ANN. § 521.032(a) (Vernon Supp. 2007). It also requires a one-to-many biometric matching system[12] to verify the identity of the applicant. *Id.* § 521.032(b). Section 521.032 requires reasonable security measures designed to protect against unauthorized disclosures about the holder of the enhanced driver's license. *Id.* § 521.032(c). And it requires encryption of any included radio frequency identification chips. *Id.* These provisions appear to conform to the tamper proof and machine-readable requirements of section 7209(b).

An enhanced driver's license issued under section 521.032 must also be determined by the Secretary of Homeland Security to sufficiently denote citizenship and identity. 8 U.S.C.A. § 1185 note § 7209(b)(1)(A) (West Supp. 2007). And while we are unaware that the Secretary of Homeland

---

[12]One-to-many biometric matching "compares a presented biometric sample against a set of enrolled biometric templates. This process seeks to determine if a person is present or not present in the database." Randy Vanderhoof, *The Top 10 Hot Identity Topics*, Electronic Banking Law and Commerce Report, pt. 2 (May 2006), *available on* Westlaw, 11 No. 4 GLEBLCR 1. *See also* HOUSE BILL REPORT, Wash. S.B. 5412, 58th Leg., R.S. (2004) (describing one-to-many biometric technology that allows "the Department of Licensing to check a new driver's license . . . applicant against a database of other drivers to ensure that the individual is not already licensed elsewhere or under another name"), *available at* http://www.leg.wa.gov/billinfo/ (last visited Jan. 16, 2008).

Security has as yet made such a determination regarding an enhanced driver's license under section 521.032,[13] section 521.032 does authorize the Department to enter into "a memorandum of understanding with any federal agency for the purposes of facilitating the crossing of the border." TEX. TRANSP. CODE ANN. § 521.032(f) (Vernon Supp. 2007). In so providing, section 521.032 appears to actually contemplate an agreement and coordination between the Department and the DHS whereby the Department would seek the necessary determination from the Secretary of Homeland Security. Should the Secretary of Homeland Security determine an enhanced driver's license issued under section 521.032 to be sufficient to denote citizenship and identity, the section 521.032 enhanced driver's license would be consistent, and not conflict, with federal law regarding passports.

---

[13]The DHS has entered into a formal Memorandum of Agreement with the State of Washington. *See* Press Release, U.S. Department of Homeland Security and Christine O. Gregoire, Governor, State of Washington, *DHS and the State of Washington Team Up to Advance Western Hemisphere Travel Initiative* (Mar. 23, 2007), *available at* http://www.dhs.gov/xnews/releases/pr_1174904636223.shtm (last visited Jan. 16, 2008). And it is anticipated under the agreement that the enhanced driver's license issued by the State of Washington will be determined to be sufficient by the Secretary of Homeland Security. *See* Memorandum of Agreement Between The State of Washington, Office of the Governor and Department of Homeland Security at 2, sec. IV (Mar. 23, 2007) (on file with the Opinion Committee). The statute under which the State of Washington is authorized to provide enhanced driver's license is practically identical to section 521.032. *Compare* WASH. REV. CODE ANN. §§ 46.20.202, 46.20.2021 (West 2007), *with* TEX. TRANSP. CODE ANN. § 521.032 (Vernon Supp. 2007).

## S U M M A R Y

Section 521.032 of the Texas Transportation Code requires an enhanced driver's license to be supported by an applicant's proof of citizenship, identity, and state residency, and to include a one-to-many biometric matching system as well as reasonable security and encryption measures. A section 521.032 enhanced driver's license is consistent with current federal law regarding passports if: (1) the license is "determined . . . by the Secretary of Homeland Security to be sufficient to denote identity and citizenship"; and (2) the license conforms to the technology, security, and operational requirements of the Western Hemisphere Travel Initiative implemented under section 7209(b) of Public Law 108-458, such as being machine readable and tamper proof.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee