**CITY OF OCEANSIDE, a general law city and municipal corporation, Plaintiff,**

v.

**AELD, LLC., a California limited liability company and successor to The Deutsch Company, et al., Defendants.**

**And Related Counterclaim.**

**Civil No. 08cv2180 JAH (BGS).**

United States District Court, S.D. California.

Sept. 28, 2010.

Mark J. Dillon, Danielle K. Morone, Gatzke Dillon and Ballance, Carlsbad, CA, for Plaintiff.

Evelyn F. Heidelberg, Marsha Amin, Procopio Cory Hargreaves & Savitch, LLP, U.S. Attorney CV, Ernest Cordero, Jr., U.S. Attorneys Office Southern District of California, San Diego, CA, for Defendants.

## ORDER RE MOTIONS FOR SUMMARY JUDGMENT
### [Doc. Nos. 26, 27, 28]

JOHN A. HOUSTON, District Judge.

## BACKGROUND

To bring its airport into compliance with Federal Aviation Administration ("FAA") standards, Plaintiff/Counter-defendant City of Oceanside approved an Airport Master Plan, which included an updated Airport Layout Plan ("ALP"). Gurley Dec. ¶¶ 15, 18 (Doc. No. 28–2). The Airport Master Plan recommended the City acquire 2.6 acres on the north side of the airport and relocate the airport fence to bring it into compliance with federal airport safety standards for runway primary surface, and acquire 10 acres on the north side to bring the airport into compliance with FAA runway/taxiway separation safety standards. Oceanside Municipal Airport Master Plan, Pla's Exh. 1 at 46 (Doc. No. 28–3). The FAA, thereafter, approved the ALP. Gurley Dec. ¶ 19. The City Council then adopted a resolution declaring the necessity of authorizing condemnation of a 2.6 acre parcel of land owned by The Deutsch Company, the predecessor in interest to Defendant/Counter-claimant AELD, LLC. Resolution NO. R97–161, Pla's Exh. 14 at 238 (Doc. No. 28–5). In December 1997, Deutsch filed a lawsuit in state court against the City for a writ of mandate and for declaratory and injunctive relief, seeking a writ of mandate directing the City to set aside the resolutions and enjoin the City from enforcing or giving effect to the resolutions. Deutsch Complaint, Pla's Exh. 3 at 48 (Doc. No. 28–3). Deutsch and the City reached a settlement in the case in June 1999. See Settlement Agreement and Limited Mutual Release, Pla's Exh. 16 at 262 (Doc. No. 28–5). Pursuant to the agreement, the City exercised its option and purchased a parcel of land from Deutsch using federal grant funds on May 20, 2003. See Grant Deed, Pla's Exh. 19 (Doc. No. 28–6).

The Settlement Agreement provided Deutsch the option to repurchase the parcel if the City did not improve it with airport related improvements within five years of the City's purchase of the parcel. See Settlement Agreement and Limited

Mutual Release at 14. In a letter dated May 19, 2008, AELD, as Deutsch's successor in interest, exercised its option to repurchase the parcel. *See* AELD Letter, Pla's Exh. 20 at 367 (Doc. No. 28–6). An escrow account was opened to consummate the transaction. *See* AELD's Exh. B67 (Doc. No. 26–5). The City sought information from the FAA for disposing of land purchased with federal funds in light of AELD's desire to exercise the repurchase option. *See* Gurley Letter, Pla's Exh. 21 (Doc. No. 28–6). The FAA notified the City it would not grant the City a release of the parcel, because the property was still needed for aeronautical purposes. *See* Withycombe Letter, Pla's Exh. 22 (Doc. No. 28–6).

On November 11, 2008, counsel for the City modified the proposed joint escrow instructions to include a condition requiring the FAA's approval of the transaction. *See* AELD's Exh. B63 (Doc. No. 26–5). AELD informed the City that imposing a condition on the escrow instructions deviates from the terms of the Settlement Agreement and constitutes a breach and filed an administrative claim for damages. *See* Heidelberg Letter, AELD's Exh. B61 (Doc. No. 26–5).

The City filed the pending matter on November 25, 2008, seeking declaratory and injunctive relief. Plaintiff alleges the Buy–Back provision of the Settlement Agreement is preempted because it directly conflicts with the regulatory action between the FAA and the City under the Airport and Airway Improvement Act ("AAIA") and the Federal Aviation Act ("FA Act").

On February 2, 2009, AELD filed an answer and counterclaim against the City of Oceanside. The Federal Defendants filed an answer on February 3, 2009. Plaintiff filed a motion seeking to dismiss AELD's third counterclaim. The parties, thereafter, jointly sought leave to allow AELD to amend its answer and counterclaim. AELD filed its amended answer and counterclaim on April 14, 2009. AELD seeks damages for breach of contract, beach of warranty of authority, breach of the implied covenant of good faith and fair dealing and declaratory relief.

The City, AELD and the Federal Defendants filed motions for partial summary judgment.[1] The Federal Defendants filed a response in support of the City's motion for summary judgment and jointly, with the City, filed an opposition to AELD's motion. AELD filed an opposition to the City and the Federal Defendants' motions. The parties all filed replies. A hearing was held before the Court after which the motions were taken under submission.

## LEGAL STANDARD

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

---

1. In a footnote, AELD argues the Federal Defendants' motion is not properly before the Court because the complaint seeks no relief against any of the Federal Defendants. In response, the Federal Defendants maintain the complaint seeks declaratory relief against the Federal Defendants and they, therefore, have standing to move for summary judg-

ment. In its complaint, the City clearly names Federal Defendants and seeks a declaration of rights and obligations under the agreement, regulations and grants at issue. The Court finds the Federal Defendants have standing to seek summary judgment as a named party in the action.

that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *United Steelworkers v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989). "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." *Lujan,* 497 U.S. at 885, 110 S.Ct. 3177 (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. *See Schneider v. TRW, Inc.,* 938 F.2d 986, 990–91 (9th Cir.1991). A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987)(citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991); *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## DISCUSSION

AELD seeks judgment, arguing the City's first, second, third, fourth, sixth and seventh claims fail, because the City improperly seeks declaratory judgment that contractual obligations are preempted by federal law. Defendant/Counter-claimant further argues the claims for damages cannot be preempted. Additionally, AELD argues it is entitled to judgment on its breach of contract and breach of warranty of authority claim.

The Federal Defendants argue the Buy–Back provision of the Settlement Agreement is void due to federal preemption, the Grant Agreement and Assurances must be enforced for public policy reasons despite the City's conflicting contractual obligations and the Grant and Assurances along with the purchase of the parcel provided the United States a legally recognized interest in the parcel that the City cannot transfer or sell.

The City contends the Buy–Back provision of the Settlement Agreement is preempted by federal aviation law.

## I. Preemption of Voluntary Contractual Obligations

■ AELD contends that claims premised upon the contention that the Settle-

ment Agreement, a contractual obligation, is preempted by the FA Act and the AAIA, fail because a private contractual obligation cannot be preempted. Citing *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), AELD argues contractual obligations are traditionally governed by state law and there is a strong presumption against preemption of private contractual obligations.

The City maintains courts have applied preemption principles to contractual agreements that seek to regulate airport use in a manner inconsistent with federal aviation law. Plaintiff argues *Wolens* should not be and has not been interpreted to establish a categorical rule that contracts cannot be subject to federal preemption.

The Federal Defendants argue preemption applies to government contracts that improperly regulate an area occupied by federal law. They maintain the Buy–Back provision of the Settlement Agreement attempts to regulate the development, use and ownership of the parcel by attempting to dictate how quickly the parcel must be developed for airport-related uses before it is subject to sale.

■ Contrary to AELD's contention, there is no language in the *Wolens* case to suggest private contractual obligations can never be preempted. In fact, courts have considered whether private contractual obligations are preempted by federal law. *See American Airlines, Inc. v. Dep't of Transp.*, 202 F.3d 788 (5th Cir.2000); *see also American Auto. Mfrs. Ass'n. v. Massachusetts Dept. of Environmental Protection*, 163 F.3d 74, 86 n. 15 (1st Cir.1998). Whether a government contract is subject to preemption depends on whether the state's conduct was proprietary or regulatory. *American Airlines, Inc.*, 202 F.3d at 810. Regulatory conduct is subject to pre-

emption while proprietary conduct is not. *Id.*

AELD argues the City was acting as a private party when it entered into a contract by which it obtained and conferred property rights. The Federal Defendants and the City argue the Settlement Agreement and the Buy–Back provision directly attempts to regulate use, ownership and disposition of the parcel purchased with federal funds and without regard to FAA approval and oversight. The City further argues its interest in the agreement was in its capacity as the airport owner for maintaining a federally obligated airport consistent with highly regulated federal aviation framework.

The City's participation in the Settlement Agreement was for the purpose of settling the lawsuit which involved the condemnation/sale of the land owed by AELD's predecessor-in-interest to comply with the City's obligation to bring its airport into compliance with federal safety standards. This action supports the City's duty to protect the public rather than as an entity seeking to procure goods or services for its own interests. *See Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 881 (9th Cir.2006). The Court finds the City's conduct in entering into the Settlement Agreement was in its regulatory capacity. Accordingly, the contract provision may be subject to preemption.

## II. The Buy–Back Provision of the Settlement Agreement is Void Due to Preemption

The supremacy clause of Article VI of the Constitution states that the Constitution and the laws and treaties made pursuant to it, are the supreme law of the land. If there is a conflict between state law and federal law, the federal law controls. *Gade v. National Solid Wastes Manage-*

*ment Association,* 505 U.S. 88, 108, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992).

■■■ There are two types of preemption, express and implied. The City and the Federal Defendants argue implied preemption. There are two types of implied preemption, field and conflict. Field preemption exists where federal regulations are so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it. *Gade,* 505 U.S. at 98, 112 S.Ct. 2374. Conflict preemption is found when compliance with both federal and state regulations is a physical impossibility or where state law interferes with congressional purpose. *Id.*

■■ An act of Congress is pervasive if it "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject" or "the object sought to be obtained by the federal law and the character of the obligations imposed by it may reveal" that the purpose of the law is to occupy the field entirely. *Pacific Gas and Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983).

The Federal Defendants argue preemption should be inferred, because the responsibility for the oversight and implementation of aviation law and programs is assigned to the FAA under the FA Act and the FAA is provided extensive authority concerning the use and management of the navigable airspace, air traffic control, air navigation facilities, and, more specific to this case, the power to provide financing for the planning and development of public-use airports as authorized by the AAIA. They argue Congress has so occupied the area of airport development, and, therefore, the City is preempted from regulating, through local law or contract, the development, use and ownership of the parcel acquired with federal grant funds.

The City argues the pervasive nature of the federal regulation of aviation safety in the FA Act demonstrates an intention to preempt state and territorial regulation of aviation safety. Oceanside maintains, in connection with the FAA's management of the navigable airspace under the FA Act, the FAA has adopted an advisory circular to ensure that civil airports are designed and operated in a safe manner and the transfer of the parcel will preclude the City from bringing the airport into compliance with FAA's standards. The City further argues the AAIA's pervasive statutory scheme precludes enforcement of the Buy–Back provision.

In opposition, AELD argues the FA Act does not occupy an entire field and it contains a narrow preemption provision limiting preemption to prices, routes, and services of air carriers and contains a "savings clause" which preserves other remedies provided by law that are not expressly preempted. AELD further argues the AAIA, which is merely a "mechanism through which the FAA is to determine whether to provide federal funding to airport development and improvement projects," *City of Cleveland v. City of Brook Park,* 893 F.Supp. 742, 752 (N.D.Ohio 1995), has no preemptive effect on the contractual obligations between the Plaintiff and AELD.

AELD also argues the specific field covered by the Buy–Back provision is contract law breach of contract claims, and neither the City or the Federal Defendants demonstrate the federal statutes address contract law.

In response to AELD's motion, the City argues the express preemption clause cited by AELD is found in the Airline Deregulation Act and prohibits localities from enacting or enforcing a "law related to a

price, route or service of an air carrier that may provide air transportation", 49 U.S.C. § 41713(b)(1), and is, therefore, not applicable to the facts in this case. Oceanside further argues the inclusion of an express preemption clause in a statute does not foreclose the possibility of implied preemption. Plaintiff also argues AAIA's preemptive effect stems from the FAA's interest in and oversight of federal investments in airports. That interest and oversight requires acknowledgment of the force and effect of the Assurances, which are based in statute, further expounded upon in regulations and incorporated into the federal grant agreements with Oceanside.

The express preemption clause and the savings clause contain no language limiting the FA Act's preemptive effect to regulations related to price, route or service. Additionally, the existence of an express preemption clause does not "entirely foreclose any possibility of implied preemption." *Freightliner v. Myrick*, 514 U.S. 280, 288, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995).

The Ninth Circuit recognizes the federal government's pervasive regulation of aircraft, airspace and aviation safety. *See Montalvo v. Spirit Airlines*, 508 F.3d 464, 472–74 (9th Cir.2007) (finding Congress intended to displace state law and establish a single, uniform system of control over air safety, including passenger warnings.); *City and County of San Francisco v. F.A.A.*, 942 F.2d 1391 (1991) ("The federal government regulates aircraft and airspace pervasively, preempting regulation of aircraft noise by state or local governments."). The FAA is tasked with developing and maintaining a regulatory system for air commerce and safety. *See* 49 U.S.C. § 40101 *et. seq.* Congress authorized the FAA to develop regulations for

aviation safety under the FA Act. *See id.*, *see also* 49 U.S.C. §§ 44501, 44502(a); 44701(b)(2). Further, Congress authorized the FAA, pursuant to the AAIA, to provide grants for public-use airports under the Airport Improvement Program. *See* 49 U.S.C. § 47101, *et. seq.; see also Flamingo Exp., Inc. v. F.A.A.* 536 F.3d 561, 563 (6th Cir.2008). Pursuant to this authority, the FAA may approve a grant application only if it receives written assurances about airport operations and may impose terms on the grant necessary to carry out the various regulations for airport improvement. See 49 U.S.C. §§ 47107, 47108. The assurances include requirements as to the layout of the airport and acquiring land for airport use. *See* 49 U.S.C. § 47107.

■ The comprehensive statutory scheme of the FA Act and the AAIA demonstrate the dominance of the federal interest in aviation safety and more specifically, land use for airport facilities. Additionally, the goal of ensuring aviation safety coupled with required assurances on acquiring land for airport purposes demonstrate Congress' intent to occupy the field entirely. As such, the federal law is pervasive and the City's attempt to regulate the use of the land through the Buy Back provision of the settlement agreement is preempted.

The Court further finds the Buy–Back clause directly conflicts with the regulations and assurances that preclude the City from modifying the existing airport layout plan without the FAA's consent. Compliance with the Buy–Back provision would thwart the FAA's ability to prevent unapproved changes or alterations to the Airport Layout Plan and would serve as an obstacle to the federal government's objective in bringing the airport into compliance with federal safety standards.[2]

2. The Court is not persuaded by AELD's un- supported argument that its claim for dam-

Accordingly, the Buy–Back provision of the Settlement Agreement is preempted and, therefore, unenforceable. Plaintiff is entitled to judgment on its first claim for declaratory relief, second claim for declaratory relief, third claim for declaratory relief and fourth claim for declaratory relief as to the preemptive effect of the AAIA and the FA Act over the Buy–Back provision. AELD moves for judgment as to Plaintiff's sixth and seventh claims for relief, contending they fail to the same extent the first through fourth claims fail. Because the Court finds Plaintiff is entitled to judgment on the first through fourth claims, AELD's motion is denied.

### III. AELD's Counterclaims

Plaintiff seeks judgment as to AELD's first, second, third and fourth counterclaims in the event the Court finds the Buy–Back provision is deemed preempted. AELD concedes its first and second counterclaims are based on the breach of the Settlement Agreement and its warranties and arise from the preempted provision. The Court finds AELD's first counterclaim for damages for breach of contract, and second counterclaim for damages for breach of warranty of authority are based upon the unenforceable Buy–Back provision. As such, for the reasons stated above, the City is entitled to judgment on those claims.

AELD's maintains its third counterclaim for fraudulent inducement and fourth counterclaim for breach of the implied covenant of good faith and fair dealing are based upon the City's conduct in negotiating and performing a contractual obligation not the subject matter of the preempted provision. AELD argues,

therefore, the City is not entitled to judgment as a matter of law on those claims based upon the preempted provision.

In reply, the City argues if the provision is unenforceable, rights and remedies cannot arise from the unenforceable provisions.

 AELD's third counterclaim seeks relief for fraud in the inducement. Specifically, the counterclaim alleges the City made false representations to Deutsch when negotiating the Settlement Agreement, knowing they were false or without reasonable grounds for believing the representations to be true. *See* First Amended Counterclaim at 39–40 (Doc. No. 18). The elements of a fraud claim are false representation, knowledge of falsity, intent to defraud, justifiable reliance and damages. The claim does not require the existence of a contract. The Court finds AELD's counterclaim does not arise from the voided provision as argued by Plaintiff. Rather, AELD alleges Plaintiff's conduct in negotiating the voided provision was a result of fraud. Finding the Buy–Back provision void does not extinguish AELD's fraud claim. Plaintiff is not entitled to judgment on this claim.

 AELD's fourth counterclaim alleges the City breached the implied covenant of good faith and fair dealing of the Settlement Agreement "by preventing AELD from receiving the benefits to which it, as successor to Deutsch, was entitled to under the Settlement Agreement." First Amended Counterclaim ¶ 70. Inherent in every contract is a duty of good faith and fair dealing, which is imposed on each party in its performance and its enforcement. See *McClain v. Oc-*

---

ages does not conflict with federal law. The inquiry is whether the City's regulatory conduct, here the selling of the land purchased with federal grant funds pursuant to the Buy-

Back provision, conflicts with federal law not whether the remedy sought serves as an obstacle.

*tagon Plaza, LLC,* 159 Cal.App.4th 784, 798, 71 Cal.Rptr.3d 885 (2008). The "implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Schoolcraft v. Ross,* 81 Cal.App.3d 75, 80, 146 Cal.Rptr. 57 (1978). To establish a breach of the implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract. See *Racine & Laramie, Ltd. v. Department of Parks & Recreation,* 11 Cal. App.4th 1026, 1031–32, 14 Cal.Rptr.2d 335 (1992). A review of the Amended Counterclaim demonstrates AELD's claim for breach of the implied covenant of good faith and fair dealing arises from the City's failure to comply with the Buy–Back provision, and therefore is dependent on the existence of the provision. AELD must prove the existence of a contractual obligation and conduct that frustrates its rights to benefit therefrom, and thus, the gravamen of the claim is the void Buy–Back provision. Accordingly, the Court's finding that the Buy–Back provision is void is fatal to AELD's fourth counterclaim. Plaintiff is therefore entitled to judgment on this claim.

### CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1. Plaintiff's partial motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** as to Plaintiff's first, second, third and fourth claims and as to AELD's first and second, and fourth counterclaims. The motion is **DENIED** as to AELD's third counterclaim.

2. The Clerk of Court shall enter judgment in favor of Plaintiff as to Plaintiff's first, second, third and fourth claims and as to AELD's first and second counterclaims.

3. The Federal Defendant's motion for summary judgment is **GRANTED.**

4. AELD's motion for summary judgment is **DENIED.**